## Bird Melton v. The State.

### No. 2220. Decided April 2, 1913.

### Rehearing denied June 18, 1913.

**1.—Rape—Circumstantial Evidence—Venue—Fraud—Intercourse.**

Where defendant was indicted for rape by fraud, etc., and the evidence showed a mock marriage and that the defendant thereafter, in the county of the prosecution, went to bed with his alleged wife who denied that she had had sexual intercourse with him that night, the circumstances were such that the jury could, nevertheless, find him guilty of having sexual intercourse with her that night, and the venue was thereby established under a proper charge of the court. Following Ward v. State, 12 Texas Crim. App., 174, and other cases. Davidson, Presiding Judge, dissenting.

**2.—Same—Charge of Court—Venue—Requested Charge—Mock Marriage.**

Where, upon trial of rape by fraud by reason of a mock marriage, the court submitted a full and fair charge on every issue of the case, and expressly required the jury to believe beyond a reasonable doubt that the defendant had sexual intercourse with the prosecutrix, in the county of the prosecution—defining rape—there was no error in refusing a requested charge on the same subject. Following Lee v. State, 4 Texas Crim. App., 345, and other cases.

**3.—Same—Accomplice—Charge of Court.**

Where defendant raped prosecutrix by fraud under a mock marriage, she was not an accomplice, and there was no error in the court's failure to submit a charge thereon.

**4.—Same—Jury and Jury Law—Special Venire—Sheriff.**

Where it appeared from the record that in summoning the special veniremen, the sheriff summoned among others a certain juror, and by some mistake, the copy of the venire which was served on defendant omitted the name of said juror, and the defendant made a motion to quash the whole venire, which the court overruled and excused the said juror, and the jury was secured before defendant exhausted all of his challenges, there was no error. Following Bowen v. State, 3 Texas Crim. App., 617, and other cases.

**5.—Same—Charge of Court—Definition of Fraud.**

Where, upon trial of rape by fraud, the court's charge required the jury before they could convict defendant to believe that he had obtained sexual intercourse with said female by the practice and perpetration of fraud, there was no error. Following Wilkinson v. State, 60 Texas Crim. Rep., 388, and other cases.

**6.—Same—Evidence—Bill of Exceptions.**

In the absence of a bill of exceptions, complaints to the introduction of evidence can not be considered on appeal.

**7.—Same—Reasonable Doubt—Venue.**

It has always been held that it is not essential that venue should be proved beyond a reasonable doubt, and the doctrine of reasonable doubt does not apply to the issue of venue. Following Barrara v. State, 42 Texas, 260, and other cases.

**8.—Same—Charge of Court—Venue.**

Where the question of venue was not a distinct and affirmative defense, but the court, nevertheless, in his charge, required the jury to believe beyond a reasonable doubt that the offense was committed in the county of the prosecution, when considering the charge as a whole, there was no error in refusing a special charge thereon.

**9.—Same—Venue—Verdict—Indictment—Charge of Court.**

Where, upon trial of rape by fraud, the jury could not have found the defendant guilty under the indictment, charge of court, and verdict, without specifically finding that the offense was committed in the county of the prosecution, and that they could not have been misled that the offense was committed in another county, there was no error. Davidson, Presiding Judge, dissenting.

**10.—Same—Sexual Intercourse—Sufficiency of the Evidence—Circumstantial Evidence.**

Upon a trial of rape by fraud, the offense can be established by circumstantial evidence as fully and completely as by positive or direct evidence, and the jury are the exclusive judges of the facts and the credibility of the witnesses, and have the right, from all the surrounding circumstances, appearances of the witnesses, etc.; to find their verdict, and where they concluded that according to the ordinary experience of mankind, the defendant had sexual intercourse with the alleged female by reason of fraud of a mock marriage in the county of the prosecution, the conviction is sustained, although the said female denied that she had such intercourse. Davidson, Presiding Judge, dissenting.

**11.—Same—Common Law Marriage—Bigamy—Rape.**

In order to successfully prosecute a person for bigamy under a common law marriage, it takes not only the assent of the parties to the marriage, but a continuous living together thereafter as husband and wife, and where the evidence on trial for rape showed by the circumstances that the defendant had sexual intercourse with the alleged female in the county of the prosecution on the night following a mock marriage, he was not guilty of bigamy, but of rape. Davidson, Presiding Judge, dissenting.

**12.—Same—Principle of Carving—Rape—Bigamy.**

Where the defendant was tried for rape by fraud, he could not complain that he was guilty of bigamy also, as the State had the right to carve either offense out of the transaction, and the defendant had no right to elect for what offense he should be prosecuted. Following Quitzow v. State, 1 Texas Crim. App., 47, and other cases.

**13.—Same—Presumption of Innocence—Presumption of Guilt.**

The presumption of innocence is a legal presumption, but proof can be offered to show guilt, notwithstanding this presumption, and when that is done and the jury on sufficient evidence finds defendant guilty, the presumption of innocence is done away with and no longer prevails, and where such verdict is authorized by circumstantial evidence that the defendant had sexual intercourse by fraud in the county of the prosecution, the fact that said female denies such intercourse, which the jury disbelieved, the verdict is, nevertheless, sustained. Following Lee v. State, 44 Texas Crim. Rep., 354. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Eastland. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of rape by fraud; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. R. Stubblefield,* for appellant.—On question of venue: Miles v. State, 23 Texas Crim. App., 410; Smith v. State, 25 id., 454; Wilkenson v. State, 60 Texas Crim. Rep., 388, 131 S. W. Rep., 1108; Lee v. State, 44 Texas Crim. Rep., 354; Acts of 25th Legislature, p. 16; Davis v. State, 63 Texas Crim. Rep., 484, 141 S. W. Rep., 93.

On question that defendant has a right to have his defense distinctly and affirmatively submitted in connection with venue: Moore v. State, 59 Texas Crim. Rep., 361; Coleman v. State, 54 id., 396; Holt v. State, 57 id., 432; Martin v. State, 57 id., 264; Wheeler v. State, 56 id., 547.

Proof that an offense was committed in another county from that of the prosecution will not support a conviction: Chivarrio v. State, 15 Texas Crim. App., 330; Miles v. State, 23 id., 410; Mischer v. State, 41 Texas Crim. Rep., 212.

On question of charge on accomplice testimony: Johnson v. State, 58 Texas Crim. Rep., 244; Parr v. State, 36 id., 493; Winn v. State, 15 Texas Crim. App., 169.

On question that controlling importance should be attached to testimony of prosecutrix: Johnson v. State, 58 Texas Crim. Rep., 244.

On question that defendant was married and prosecutrix was unmarried, etc.: Dissenting opinion in Lee v. State, 44 Texas Crim. Rep., 354.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—By a proper count which alone was submitted to the jury, appellant was indicted for rape, alleged to have been committed on Annie Clarkson in Eastland County, Texas, on October 9, 1911, by force, threat and fraud. He was convicted and his penalty fixed at five years confinement in the penitentiary, the lowest prescribed by law.

Annie Clarkson was a girl about fifteen years old at the time this offense is charged to have been committed and lived with her parents. Her parents were tenant farmers living in a small house on a farm in Palo Pinto County. Not a great while before this he had lived for several years in Eastland County, and prior to that in other counties in the State. Appellant was a young man who boarded with her family for a few months just prior to the alleged commission of this offense, and while with the family he courted and became engaged to be married to Annie some three months prior to this offense. He had formerly at some time been married to another woman. Annie and her family knew this. He told Annie, however, that he had been divorced from that wife. A few days before the time of this offense he and Annie, together with her brother and sister just older than she, went in a wagon from her father's in Palo Pinto County to her uncle's, living in Eastland County. Appellant's parents also lived in Eastland County. They reached her uncle's in Eastland County Sunday morning about an hour by sun; it was arranged between Annie and appellant that they would be married in Eastland County at or near her old home where she and her parents had formerly lived. After they reached her uncle's, appellant left them and claimed he went to his father's. When he returned to Annie at her uncle's, he reached her about an hour by sun Monday evening. They then started to return to her parents, the same said four persons, and went by or to the place in Eastland County where

she and her parents had formerly lived. Appellant claimed and told her he had procured a license to marry her at Eastland and had arranged to have a preacher to meet them near her old home and to perform the marriage ceremony. When they reached a point near her former home, appellant had the wagon stopped, got out and went back out of sight of the others for some distance and was gone several minutes,—the witnesses differing as to time from ten to thirty minutes. He then returned to the wagon, told Annie to get out and go with him, which she did, leaving her brother and sister. Appellant took her back some hundred yards out of sight of her brother and sister, met a person whom he claimed was a preacher, and who performed the ceremony and pronounced them man and wife. This was at night,—a moonlight night. They then returned to the wagon, told her brother and sister that they had just been married and they drove on a few miles when they stopped and stayed all night. They made up a fire on the ground, the brother slept on the wagon seat at the fire, his unmarried sister in their wagon in which they were traveling, and appellant and Annie went into the field of someone and occupied a wagon that was in that field in which there was some seed cotton. They remained there all night.

The record shows clearly that Annie was an ignorant country girl and her testimony indicates that she was not at all bright or smart. Appellant did not testify. Annie testified and showed that she believed he had procured a license as he told her he had, and that they had been legally and properly married by said person on that night. She testified that while they stayed alone together in the wagon that night he kissed her and fondled her person and had his hands on her, but that he did not that night have sexual intercourse with her; that the next day they continued their journey, reaching her parents, where they announced their marriage, and that they occupied a bed and room at her parents that night and for a short time afterwards, and that that night he did have sexual intercourse with her; that they stayed with her parents only for a short time and then removed elsewhere in Palo Pinto County and lived as husband and wife for several months, she fully believing they were lawfully husband and wife; that she would not have permitted appellant to have had intercourse with her at any time if she had not believed that she was properly married to him. It was shown that appellant had procured no license at Eastland to marry her; that his wife or former wife was still living; that he denied to his brothers that he was married to Annie.

Practically the sole question of any moment in this case is whether or not the evidence was sufficient to show that appellant had sexual intercourse with Annie in the wagon where they remained the first night after he married her in Eastland County. The court charged on circumstantial evidence. We take it that because of the ignorance and inexperience of said witness Annie, she would cross herself in her own testimony; but the jury who saw and heard her and who saw and heard the manner of her examination and cross-examination, were the judges

exclusively of her credibility and the weight of her evidence. The whole record shows that appellant, who was a married man, deceived this girl and her whole family, claiming that he had been divorced from his wife, or previous wife. He was not living with her at that time and had not been for several months before. As a matter of fact, he was still married to that previous wife. He courted Annie and became engaged to be married to her and evidently deceived her and had this mock marriage by an assumed preacher for the sole purpose of inducing this girl to have intercourse with him, and he thereby accomplished his purpose. It is apparent from the record that he had failed otherwise to have sexual intercourse with her. While the girl denied that he had sexual intercourse with her that first night, the court having properly charged on circumstantial evidence, it was a question for the jury whether or not,—notwithstanding her denial,—he had sexual intercourse with her that night. The jury was composed of twelve fair and impartial jurors. Doubtless of different ages and business and at different locations in the county. They saw and heard all the witnesses. Appellant was, of course, before them during the whole trial. They reached the conclusion that he had sexual intercourse with this girl that first night. Under the circumstances it would stagger human credulity and would be the reverse of what every man knows to be human nature, if, under the circumstances, he did not have sexual intercourse with her that night. In our opinion the evidence was amply sufficient to justify the jury to believe and find as they did, that he did have sexual intercourse with her that night. Where they stayed that night was clearly shown to be in Eastland County. Ward v. State, 12 Texas Crim. App., 174; Price v. State, 18 Texas Crim. App., 474.

Any fact which can be established by direct, can also be established by circumstantial, evidence. The circumstances proven in this case, together with the knowledge of human nature, is amply sufficient to authorize the jury to find that appellant had sexual intercourse with said Annie Clarkson, notwithstanding she testified he did not on said first night. It would, at least, be no more than one testifying he did not, while another, with equal, or like opportunity, testified he did. She testified he did not. The circumstances unerringly testified, or authorized the jury to find, he did.

Even if we should not be correct in this, then our venue statute as to this offense, is to this effect: Prosecutions can be carried on, first, in the county where committed; second, in any county of the judicial district, and, third, in any county of the judicial district the judge of which resides nearest the county seat of the county in which the offense is committed. The evidence, without doubt and overwhelmingly established appellant had sexual intercourse with said girl in Palo Pinto County, if not, or in addition, to having done so in Eastland County, or without reference to Eastland County. There being nothing to the contrary on this question of venue, it must be determined that Judge Blanton was the judge nearest the county seat of Palo Pinto County,

and Eastland County being in his district and adjoining Palo Pinto, the case was properly tried by him in Eastland County. So that in either event the venue was in Eastland County. Mischer v. State, 41 Texas Crim. Rep., 212.

The court submitted a full, fair and apt charge on every issue in the case. His charge follows and is substantially what was given in Lee v. State, 44 Texas Crim. Rep., 354, and Wilkerson v. State, 60 Texas Crim. Rep., 388, which were expressly approved by this court. In addition, the court gave appellant's special charge to the effect: "Unless you find from the evidence that the defendant did not marry Annie Clarkson you will acquit him."

The court in his charge expressly required the jury to believe beyond a reasonable doubt that the appellant had sexual intercourse with said Annie in Eastland County, Texas, and that his private male organ penetrated the private female organ of said Annie, before they could convict him. Hence, the court did not err in refusing to give appellant's special requested charges on these subjects, because the court had clearly embraced them all in his main charge.

The evidence did not show that said Annie was an accomplice. If appellant raped her by fraud as alleged and as required to be affirmatively found by the court before they could convict him, she was not, and could not have been an accomplice; hence, the court did not err in refusing appellant's charge submitting to the jury whether or not she was an accomplice.

It appears that in summoning the special veniremen the sheriff, among others, summoned, and so returned, one J. B. Fenley. In proper time the clerk issued the proper process, requiring the sheriff to serve appellant with a copy of the veniremen summoned and included said Fenley's name. By some mistake the copy that was served on appellant omitted Fenley's name. For this reason appellant made a motion to quash the whole venire. The court overruled this motion and in the explanation to appellant's bill stated on July 8, 1912, the case was set down for trial for July 19, 1912, at 8:30 o'clock a. m.; that the special venire was served on appellant on July 17, 1912, but that it omitted said Fenley's name from the copy so served; that when the case was called, at the time set, appellant, the district attorney, witnesses and veniremen were all present, but appellant's counsel was absent; that after waiting a reasonable time for him, the court proceeded to empanel the venire as to matters touching their qualification. At this juncture appellant's counsel appeared and verbally moved the court to quash the venire for the reason that said Fenley's name had been left off of the copy served on appellant; that the court thereupon excused said Fenley and did not require defendant to pass upon him; that a jury was secured before defendant exhausted all of his challenges. This bill shows no error by the court. Judge White, in his Annotated C. C. P., section 721, says: "Mere discrepancies in some of the names as stated in the copy and the original will be immaterial where it appears that the parties

named did not serve on the trial, and defendant did not exhaust his
peremptory challenges.   Bowen v. State, 3 Texas Crim. App., 617.   If
there is a variance between the name set out in the copy and the original,
the proper practice is to stand such venireman aside.   Mitchell v. State,
36 Texas Crim. Rep., 278; Hudson v. State, 28 Texas Crim. App., 323;
Thompson v. State, 19 Texas Crim. App., 593; Swofford v. State,
3 Texas Crim. App., 76; Bowen v. State, 3 Texas Crim. App., 617."
The court in this instance pursued the proper practice; appellant was
not required to pass on this juror, he got a complete jury out of the
panel that was served on him without exhausting his challenges.

As stated above, the charge of the court followed substantially if not
literally the charges in said Lee and Wilkerson cases, supra, in the defi-
nition of fraud under our rape statute, and required the jury to believe
before they could convict him that he had obtained sexual intercourse
with this girl by the practice and perpetration of said fraud.   So that
the criticism of appellant of the court's charge not requiring the jury
to believe all the necessary requisites, which were held sufficient in said
cases, is also without merit.

Appellant has several complaints in his motion for new trial about
the introduction and exclusion of testimony, but there is no bill on the
subject.   Hence, such complaints can not be reviewed by this court.

We have carefully considered all of appellant's complaints and in our
opinion none of them show any reversible error.   Wherefore, this case
will be affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE.—I will add some observations later.
I can not agree with a portion of this opinion.

DAVIDSON, PRESIDING JUDGE (dissenting).—I have been unable to
agree with my brethren in affirming this case.   I deem it unnecessary
to go into anything like a detailed statement of the evidence.   Prose-
cutrix testified that she and appellant had known each other for a couple
of years, and had been engaged for some months, and were finally mar-
ried in Eastland County while in that county on a visit to her relatives.
She further testified that she was aware of the fact that appellant had
been previously married, but had been informed by him and believed it
to be true that he had obtained a divorce from his wife some months
prior to her marriage with him.   It would seem, however, from the tes-
timony developed on the trial appellant had not been divorced from his
former wife, but that she was still living.   Believing that there was
no legal obstacle to their marriage in Eastland County prosecutrix mar-
ried appellant.   After the marriage they lived together for about nine
months, assuming all the duties and obligations of husband and wife,
so holding themselves out to the world.   The day following their mar-
riage they returned to her father's residence in Palo Pinto County and
remained for some time and until appellant secured a home of his own,

to which they then moved. This relation continued between them publicly and everywhere they were until this prosecution began. . Something like a year or nearly so after the marriage appellant was indicted and afterwards convicted for having committed rape on the prosecutrix by fraud, that is, inducing her to believe that they were married, thereby obtaining sexual favors. The marriage as detailed by the prosecutrix occurred as follows: A day or two before their marriage they left her father's residence, that is, she and appellant, accompanied by her brother and sister, going to Eastland County, where they visited relatives of the prosecutrix. The family knew of her engagement to be married to the defendant about four months before the ceremony occurred. Quoting her language: "This ceremony took place in Eastland County, Texas. After this ceremony we went right straight on the way home. We went back to the wagon. Q. Did you and the defendant, either of you, tell your brother and sister what had taken place? A. Yes, sir. We went that night up about four or five miles from Ranger and camped. I slept that night with the defendant, Bird Melton. I did not have sexual intercourse with him that night. The next morning we got in the wagon and started on home and went on home that night, or the next day, to my mother's and father's house. When we got home my mother and father were present. Me and the defendant informed my father and mother of the ceremony that had taken place. We told them about it—my sister did, just as soon as we got there. I continued to live with him there at my father's and mother's as husband and wife. I lived with him about nine months. . . . We lived as husband and wife nine months. We never lived at my father's and mother's but a week after we were married and moved out in the country. I would not have submitted to his sexual embrace and have had sexual intercourse with him unless I had thought I was married to him. I would not have submitted to him under any circumstances or conditions unless I thought I was his wife. If I had known I was not married I would not have had intercourse with him. We remained together as husband and wife about nine months." Speaking of the night they were married, she says: "We did not sleep in our own wagon. We didn't have intercourse that night. He didn't try to have intercourse with me that night. We didn't have intercourse until we went over there and got over there to Graford." This was in Palo Pinto County. She further testified she knew he had been married, but had been informed and believed he had obtained a divorce from his wife, and, therefore, she married him. My brethren call this "a mock marriage," and the intercourse with prosecutrix they term "rape by fraud." I am persuaded that under the law and the decisions, this could by no sort of legal construction be rape. Appellant may have been guilty of bigamy but not rape. If appellant had not been previously married at the time and had a then living wife at the time he married prosecutrix in this case, under all the decisions, as I understand them, the marriage with prosecutrix would have been legal, unless we find the exception in Lee v. State, 44 Texas Crim. Rep.,

354, and Wilkerson v. State, 60 Texas Crim. Rep., 388. If the former marriage had not existed I do not believe it would have been questionable under the facts as detailed in this record that the marriage to prosecutrix would have been held a legal marriage. Such are all the decisions except those above enumerated, and even under the Lee case this marriage would be valid but for the former marriage. For a full discussion of this matter see the recent opinion by Chief Justice Brown in the case of Grigsby v. Reib, unpublished. Judge Brown, writing for the Supreme Court, in a remarkably able and exhaustive opinion, reviewed the whole question, and his conclusion, it occurs to me, is unanswerable. Under that opinion, but for appellant's previous marriage, the marriage to prosecutrix here would have been unquestionably legal. The parties went through a ceremony as testified by prosecutrix in which they agreed to live as husband and wife. This was about 7 or 8 o'clock in the evening. That night they slept together, and they continued sleeping together, cohabiting together, holding themselves as and assuming all the relations of husband and wife from that time until this prosecution was instituted. This was done in the most public manner possible. They were recognized and so treated among and by relatives and friends. In cases of bigamy it has always been held in this State what is known as a common law marriage can be shown and is valid. Burks v. State, 50 Texas Crim. Rep., 47; Hearne v. State, 50 Texas Crim. Rep., 431; Ingersol v. McWillie, 9 Texas Civ. App., 543, 30 S. W. Rep., 56; Waldrop v. State, 41 Texas Crim. Rep., 194; Simon v. State, 31 Texas Crim. Rep., 186; Knight v. State, 55 Texas Crim. Rep., 243; Dumas v. State, 14 Texas Crim. App., 464. See Branch's Crim. Law, sec. 137, for general collation of authorities. In Burks v. State, supra, it was held that the first marriage being proved, the fact that defendant married again while the first wife was living and the parties lived together as husband and wife until she discovered the fraud, evidence is sufficient though no license was issued for the second marriage. In the same opinion it was held, "it is not a prerequisite to the validity of a marriage that a license issue." Mr. Branch aptly states one of the rules this way: "All that can be required in any case involving marriage is proof of a valid marriage, for the violation of which the parties thereto may be punished. Whatever be the form of the ceremony, or if there be no ceremony, if the parties agree presently to take each other for husband and wife, and from that time on live professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage, binding on the parties, which would subject them to legal penalties for a disregard of its obligations," citing some of the cases already cited. Judge Brown in Grigsby v. Reib, supra, not only recognizes the above propositions but accentuates them in a manner that in the judgment of the writer is not debatable but unanswerable. Reiterating my statement that but for the fact that appellant had been previously married, this marriage would not have been questioned and ought not to be questioned in any court. That being true, appellant was not

guilty of rape by fraud or of any sort of rape. He was guilty of bigamy. The cases of Lee v. State, and Wilkerson v. State, supra, and the majority opinion in this case are out of harmony with all the decisions in Texas, and with nearly every decision that has been written in the jurisprudence of this country. For a full review of these matters see Judge Brown's able opinion. Marriage is not a theory but a condition, while it is resultant to some extent from contract agreement, yet it is a status resultant from certain facts—living together as husband and wife, etc.

I feel impelled to say this much in regard to one phase of the case, inasmuch as my brethren hold this "a mock marriage," in view of the testimony above detailed, which, in my judgment, makes it a legal marriage but for the prior marriage, and but for the prior marriage this would have been a legal one. This marriage is bigamous.

There is another question with which I can not agree with my brethren. I do not care to repeat the testimony that has already been mentioned. If the State succeeded in proving anything in this case, it was that defendant did not have intercourse with the prosecutrix in Eastland County. They spent the first night after their marriage in that county. The State proved beyond any question that the next night they were in Palo Pinto County, and that in that county he did have sexual intercourse with the prosecutrix. The court below submitted the case on the theory, and the indictment so charged, that the intercourse occurred in Eastland County. This matter is properly brought before the court both on the testimony and the exceptions to the charge. My brethren hold that although the State does not prove an act of intercourse in Eastland County, and although prosecutrix testifies positively it did not occur in Eastland County, and that appellant did not have intercourse with her the first night, yet they say the evidence is sufficient to justify the jury in believing they had intercourse in the face of such failure to prove it and a flat denial by positive testimony that it occurred. In other words, they hold the jury was correct in not only disbelieving the State's positive testimony, but they were justified in presuming in the face of a flat denial of the fact that intercourse did occur. The theory upon which my brethren affirm is that the idea that defendant slept with the girl that night and did not have intercourse was preposterous and not in accordance with human experience. The law does not authorize a conviction for rape because it is human experience that men have intercourse with women. The law in rape cases requires proof of the fact that intercourse occurred, that is, that there was penetration of the woman, and this sufficiently strong to overcome presumption of innocence and reasonable doubt, but here we have a conviction not only without testimony, but in fact of positive evidence by the prosecutrix that appellant did not have intercourse with her. The presumption of innocence should obtain and not the presumption of guilt. In the face of the testimony my brethren affirm this case upon the theory, and can be justified only upon the theory,

that the defendant is presumed guilty, and not only so, but in the face of the facts which positively show that intercourse did not occur, and this theory is made conclusive of guilt by some idea of human experience that newly married people always have intercourse on their wedding night. I am persuaded that the prosecutrix had more intimate knowledge of the question and the fact as to whether appellant had intercourse with her or not than did the jury or does the majority of this court. My brethren and the jury were not present and know nothing of the circumstances except as shown by this record supplemented by what they claim to be their knowledge of experience of human nature under such circumstances. · I can not go with my brethren in holding that we will presume the defendant guilty on the absence of facts, much less by presuming his guilt only from human experience in the face of facts directly to the contrary and by the only party testifying who knew the facts as they occurred, towit: the prosecutrix. The citizenship of Texas do not hold their lives and liberty on the doctrine laid down by the majority in this case, at least, it was never intended so by the framers of the Constitution and the laws enacted by the Legislature, and it has never been before so declared or intimated. The State must not only introduce evidence to prove guilt, but that evidence must produce proof sufficiently cogent, truthful and strong to overcome the presumption of innocence and reasonable doubt. The reasonable doubt is not only disregarded and overruled and destroyed in this case, but in its place is substituted the presumption of guilt, and this guilt, too, denied by all the facts. I do not care to follow this any further, except to add that the statute has not declared that sleeping with a woman is rape. There must be "penetration" else there is no rape and this must be proved.

There is another proposition in the case that I am not prepared now to discuss as intelligently as I should like to do and may do at some other time. The evidence raises the question as to whether Eastland County had jurisdiction of appellant by reason of the acts of intercourse in Palo Pinto County, it being an adjoining county to Eastland. It is shown that Palo Pinto County is in a different judicial district from that in which is situated Eastland County, and the District Courts of the two districts are presided over by different judges. The point is made and urged that inasmuch as the indictment alleges jurisdiction in Eastland County, that the act of intercourse had in Palo Pinto County could not be tried in Eastland County; that if the statute be construed so as to give Eastland County jurisdiction of the act of intercourse in Palo Pinto County, it must be alleged in the indictment that the act of intercourse occurred in Palo Pinto County. The Mischer case, 41 Texas Crim. Rep., 212, seems to bear that construction. The indictment in that case was found in Guadalupe County, but alleged the rape was committed in Colorado County, which the facts sustained. As the matter is now presented to my mind, without time to investigate further, I am inclined to believe the position taken by counsel for appel-

lant is the correct legal one.   As my brethren are affirming the case I
desire to make the above statement so that at some convenient time I
shall give the matter close investigation and careful thought.

For the reasons indicated I most earnestly dissent.

ON REHEARING.

June 18, 1913.

PRENDERGAST, JUDGE.—Appellant presents and discusses several
propositions in his motion for rehearing.

There are but two questions which we deem necessary to further dis-
cuss.   The first is the refusal of the court below to submit his special
charge on the question of venue which we will hereinafter state.   The
second is the sufficiency of the evidence to authorize the conviction.

In the original opinion we briefly stated the question of venue in rape
cases based on article 254, Code of Criminal Procedure, which was an
Act of the Legislature at the first special session in 1897, page 16, and
we cited in that connection the case of Mischer v. State, 41 Texas Crim.
Rep., 212.   This question in the original opinion was not discussed.   It
was unnecessary to the decision of this case, and, being so, we now with-
draw all that part of the original opinion and do not discuss or decide
that point on said statute.

Recurring to appellant's question first above stated.   His requested
charge, which was refused, was: "The indictment in this case alleges
that the defendant raped the prosecutrix, Annie Clarkson, in Eastland
County, and before the defendant can be legally convicted in this case,
it must be shown that the defendant did rape the said prosecutrix, Annie
Clarkson, and that the said offense occurred in Eastland County, and it
is not sufficient to prove a rape in Palo Pinto County."   Appellant cites
that line of decisions which correctly hold that a defendant is entitled
to a distinct and affirmative and not merely an implied or negative
presentation of his special defense in order to prevent the jury from
ignoring it and conduct them to a proper verdict, if they find his evi-
dence of such distinct and affirmative defense is true or raised.   This
is a correct enunciation of the law.   What is a distinct and affirmative
special defense is altogether a different question.   The question of venue
is in every case and the burden is upon the State to show the venue
where laid.   It has always been held by the Supreme Court and this
court that it is not essential that venue should be proved beyond a reason-
able doubt; that the doctrine of reasonable doubt does not apply to the
issue of venue.   Barrara v. State, 42 Texas, 260; McReynolds v. State,
4 Texas Crim. App., 327; Deggs v. State, 7 Texas Crim. App., 359;
Achterberg v. State, 8 Texas Crim. App., 463; McGill v. State, 25 Texas
Crim. App., 499; Cox v. State, 28 Texas Crim. App., 92; Abrigo v.
State, 29 Texas Crim. App., 143.

In this case the question of venue was not a distinct and affirmative
defense.   But even if it was, it was clearly submitted by the court to

the jury and they were required to believe *beyond a reasonable doubt* that the offense was committed in *Eastland* County before they could convict. It is elementary that the whole of a charge must be taken together when complaint is made of any portion thereof. It is also elementary that when a question has once been submitted properly by the charge of the court it is not only unnecessary, but improper to give a special charge further on the subject. It is needless to cite the authorities on these points.

Now let's see what the charge of the court on this subject was. In stating the case the court said: "Bird Melton stands charged by indictment with the offense of rape alleged to have been committed *in the County of Eastland,* and State of Texas, on or about the 9th day of October, A. D. 1911," then tells them that there being two counts he withdraws the first and submits to them only the second, and that in that second count, "it is charged that the defendant, Bird Melton, on or about the 9th day of October, 1911, *in the County of Eastland* and State of Texas did then and there," etc. The court then correctly tells the jury that the means charged to have been used in committing the rape is fraud, and defines to them what is meant by fraud, applicable to the statute and this offense.

Then in another separate paragraph he tells the jury that before rape by fraud is complete it is incumbent upon the State to establish by the evidence beyond a reasonable doubt the fact of fraud and that by such fraud the defendant obtained carnal knowledge of the alleged female and that such copulation was complete,—that is, "that the defendant penetrated the private organ of the alleged injured female with his private male organ."

Then in a separate paragraph submitting the case to the jury for a finding, he tells them: "Now, if you believe from the evidence in this case beyond a reasonable doubt that *in Eastland County,* Texas, on or about the 9th day of October, A. D. 1911, the defendant did," etc. (telling them fully all of the things that were necessary for them to so believe before they could convict appellant), "and that he did, by said means, have carnal knowledge of her," etc., that he would be guilty of rape as charged and to render their verdict accordingly, telling them what the penalty for the offense was.

Then follows another separate and complete paragraph, "unless you should so believe and find from the evidence beyond a reasonable doubt, you will acquit the defendant." Then follows a complete charge on circumstantial evidence. In addition, he charges the burden is upon the State to establish appellant's guilt by legal evidence beyond a reasonable doubt and follows that with a separate paragraph that appellant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt and if they have a reasonable doubt as to his guilt to acquit him. Then another paragraph follows telling the jury they are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given to their testimony,

but that they were bound to receive the law from the court as given in the charge and be governed thereby.

The count in the indictment submitted by the court specifically alleges that Bird Melton on the date named, October 9, 1911, *"in the County of Eastland* and State of Texas," did then and there, etc.

The verdict of the jury is also significant. It is, after its date: "We, the jury in the case of the State of Texas v. Bird Melton, find the defendant guilty of rape as charged in the second count of the indictment, and assess his punishment at five years in the State penitentiary."

We are clearly of the opinion that the jury could not have found the appellant guilty under the indictment, charge of the court and verdict hereinabove stated without specifically finding that the offense was committed in *Eastland* County and nowhere else; and that they could not have been misled and were not misled, and found appellant guilty because the offense was committed, if so, in Palo Pinto County and not in Eastland County. The court did not err in refusing appellant's said special charge.

On the other question of the sufficiency of the evidence to sustain the verdict, we have again and again carefully studied the evidence in this case and are clearly of the opinion that the evidence was sufficient to sustain the verdict.

We again state that it is elementary and can not be questioned that any fact can be established by circumstantial evidence as fully and completely as by positive or direct evidence. It is not only universally true that the jury are the exclusive judges of the facts and the credibility of the witnesses, but it is statutory: "The jury are the exclusive judges of the facts in every criminal cause. . . ." C. C. P., art. 734.

It is also universal that: "The jury have a right to determine from the appearance of the witnesses on the stand, their manner of testifying, their apparent candor and fairness, their apparent intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are the most worthy of credit, and to give credit accordingly.

"That the jury are the judges of the credibility of the witnesses, and of the weight to be attached to the testimony of each and all of them; and the jury are not bound to take the testimony of any witness as absolutely true, and they should not do so, if they are satisfied from all the facts and circumstances proved on the trial, that such witness is mistaken in the matters testified to by him, or that, for any other reason, his testimony is untrue or unreliable.

"The jury are instructed, that they are the judges of the credit that ought to be given to the testimony of the different witnesses, and they are not bound to believe anything to be a fact because a witness has stated it to be so—provided the jury believe, from all the evidence, that such witness is mistaken or has knowingly testified falsely." Sackett on Instructions to Juries, p. 29.

Jurors are not mere figureheads. They should not, must not and do

not give credence to every witness who testifies when there is a conflict in the evidence. If they did where one or more witnesss testified to a given state of facts, and another or others testified the reverse, they could never reach a verdict. They have the right, and it is their privilege if not their duty to believe a part of the testimony of a witness and not believe another part. They could not properly discharge their functions and ever find a verdict, unless that were true.

The jury must not receive nor consider evidence other than what is given to them on the trial of the case, and if either or any has knowledge of any fact pertinent in the case they can not consider that, unless testified to by them on the trial. There is no intimation in this record, or otherwise, that these jurors or any of them had any knowledge of any fact in connection with this case or that they received testimony other than that which was given upon the trial. Yet, it is their duty, as stated above, not to sit as mere dummies or numskulls but that they are "to use their general knowledge and experience such as any man may bring to the subject, and may and should take into account all the presumptions, which, according to the ordinary course of events, *or according to the ordinary experience of mankind arises out of the facts proved, and conclusions may be reached that lie quite beyond the mere letter of the evidence.*" Their duty and privilege in this regard is most aptly expressed in 38 Cyc., p. 1838, as follows: "To the general rule that facts in issue must be found by the jury on the evidence adduced at the trial and on the evidence alone, there is a distinct and well-defined exception, namely, that the jury have the right in making up their verdict to use their general knowledge and experience such as any man may bring to the subject, and may and should take into account all the presumptions which, according to the ordinary course of events or according to the ordinary experience of mankind, arise out of the facts proved, and conclusions may be reached that lie quite beyond the mere letter of the evidence. While a jury are not to use their own judgment in making up a verdict upon a subject calling for particular knowledge or experience not within the general knowledge they have in common with the rest of mankind; and while they can not act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced, they may, and to act intelligently, they must, judge of the weight and force of that evidence by their own general knowledge of the subject of inquiry." This statement of the law is not only backed up by unquestioned reason, but by numerous authorities as cited in Cyc. And as further stated in Patterson y. Boston, 20 Pick. (Mass.), 159, stated in note to Cyc.: "Juries would be very little fit for the high and responsible office to which they are called if they might not avail themselves of these powers of their minds when they are most necessary to the performance of their duties."

Now, then, let us see what the evidence in this case is on this point. Briefly, it is that the prosecuting witness, Annie Clarkson, did testify

that appellant did not have sexual intercourse with her the first night in Eastland County where they stayed, after the false marriage. She was before the jury as well as the appellant was. The jury had the right, as Mr. Sackett says above, to determine from her appearance on the stand, her manner of testifying, her apparent candor and fairness, her intelligence or lack of-intelligence, and from all the other surrounding circumstances appearing on the trial, whether she was worthy of credit when she so testified. They concluded from all this that her testimony on this point was not true, or was a mistake or was brought about by some or all of the facts they could look to, as to whether she was testifying the truth on this point or not. If they had believed her testimony on this point unquestionably they would have found the appellant not guilty. But that was not all the testimony nor all the surrounding facts shown to the jury. Some of them briefly are: That the appellant was a young man; he had been married but separated from his then living wife. She, Annie Clarkson, testified not only on direct but on cross-examination that before her pretended false marriage to him, "I told the jury this morning that I refused to have intercourse with the defendant before he pretended to marry me and I refused to have intercourse with him." She was a young, ignorant country girl, not then fifteen years of age, lacking more than four months of being fifteen years of age; he had been courting her and engaged to her for about three or four months prior to that. Doubtless he had used all the wiles known to him to induce her theretofore to have sexual intercourse with him, but she stood firm and told him nay. Then what does he do? He knew, not only in law but in fact, that he could not legally marry this girl. In order to induce her to go through this false pretended marriage he lied to her, telling her that he had a divorce from his then living wife. He also falsely told her to inveigle her into that pretended marriage that he had a legal license from the proper authorities of Eastland County to marry her. He also falsely told her that the person who then and there pretended to perform the marriage ceremony was a minister of the gospel and authorized to marry them. He then took her that night, after all these false representations to her, and his pretended marriage to her, and his failure theretofore to induce her to let him have sexual intercourse with her, off into a wagon partly loaded with seed cotton, where he remained with her the whole night, with no other to see or hear or molest him, she testifying, "The first night I spent with my husband he embraced me and kissed me during the night. He did not fondle me. He was familiar with my person and fondled my person. He placed his hand on my person during the night." We take it that no reasonable juror, nor judge, could for one moment doubt what this was and what it meant. We are not dealing with persons who properly and legally enter into the holy bonds of wedlock and who, for the first night, occupy the bridal bed. This is not that kind of case and this is not that kind of man we are dealing with.

But who is the man we are dealing with in this case? It is a man of experience, seeking by all the wiles to induce this young girl to have sexual intercourse with him without any even pretended marriage, but she denied him. Then to accomplish his purpose and to gratify his aroused sexual passion he induced her to marry him and occupy this wagon with him all that night, for what purpose and with what intent? To occupy the bridal bed in the holy bonds of wedlock? No, but for the sole purpose and with the sole intent of accomplishing his desire and having sexual intercourse with this child. In our opinion no reasonable juror or judge could for one moment doubt it. So what do we have? We have a young, ignorant girl, doubtless trying to protect the appellant from conviction testifying that he did not have intercourse with her that night in Eastland County, but all the other facts and circumstances point unerringly and show without the shadow of a doubt that he did, that night, have sexual intercourse with her. His purpose was not to live in holy wedlock with her. He could not lawfully do so, and he knew it. His whole object and purpose was to have sexual intercourse with her. He knew he could not live in lawful wedlock with her. He had no such purpose and intention.

But we are met with a dissenting opinion of our eminent Presiding Judge in this case wherein he contends that the evidence in this case, in effect, shows without question that this false marriage was in fact and in law a common law legal marriage and that the offense committed by the appellant was not rape but that it was bigamy. And he again reiterates briefly his dissenting opinion in the cases of Lee v. State, 44 Texas Crim. Rep., 354, and Wilkerson v. State, 60 Texas Crim. Rep., 388. He also cites and calls upon the decision of our Supreme Court in an opinion written by Chief Justice Brown in Grigsby v. Reib, 153 S. W. Rep., 1124, and claims that that opinion sustains him in his position. We have carefully read that decision and in our opinion it holds the very reverse of his contention and instead of sustaining him refutes his contention and argument. We will state that opinion as stated by Judge Brown: Mrs. Grigsby instituted suit against the children and heirs of G. M. D. Grigsby, deceased. (It will be borne in mind that there was no legal impediment whatever to the marriage of these persons, because neither of them were then married to any other person.) This Mrs. Grigsby kept what she termed a rooming house, but in fact an assignation house, in Dallas, in which girls roomed and received their visitors, and in which men and women resorted for illicit purposes. Judge Brown says: "Adopting the statements of plaintiff and her witness as true, the facts were, in substance, that Grigsby's wife having died, he visited plaintiff in her place, and they agreed to be husband and wife, and then began sexual intercourse, he coming to that house at different times and frequently. They occupied the same room and the same bed, and indulged their sexual desires. Grigsby called plaintiff his wife, and introduced her to some persons as such. . . . She did not assume the name of Grigsby until after his death. Grigsby died at Jefferson

in 1906, and defendants, under lawful claim, took possession of his property, at least of that part in suit which plaintiff claims to have been acquired by Grigsby after her alleged marriage to him, wherefore she claims one-half of it as community property." Judge Brown then states that it is unnecessary to give the facts relied upon by the defendant, because the law which must control can be more clearly stated under this plain condensed statement of plaintiff's claim.

The opinion then takes up and discusses the common law and, of course, correctly holds, which nobody denies, that a common law marriage is a valid marriage in this State. He then, among other decisions, takes up the opinion of Judge Williams in Simmons v. Simmons, 39 S. W. Rep., 639, while Judge Williams was on the Court of Civil Appeals of the First District, and shows that Judge Williams' statement of the law, wherein he said: "To constitute such a marriage it requires only the agreement of the man and woman to become then and thenceforth husband and wife. When this takes place the marriage is complete," and shows this is not, and was not, the law. This opinion in the Simmons case, and an opinion by Judge Neill in Cuneo v. De Cuneo, 59 S. W. Rep., 284, which follows it on this point, was cited by Judge Davidson in his dissenting opinion in Lee v. State, supra, to sustain him in his then contention as now. But Judge Brown in this case, Grigsby v. Reib, supra, expressly holds that the decision of Judge Williams in the Simmons case was not the law and, of course, that of Cuneo, supra, following it, had not been, and is not the law. And Judge Brown in concluding his opinion says that the court in the Grigsby case correctly charged the law not as claimed and laid down in the Simmons case, and also held that the jury had found correctly on the facts, which finding was against the claim of Mrs. Grigsby. We are in full accord with the decision in the Grigsby v. Reib case, supra, and our opinion in this case is in no way in conflict therewith, but is in full accord with it.

Judge Davidson in this case says that appellant was not guilty of rape, but was guilty, if anything, of bigamy. The rape charged in this case was alleged to have occurred, and the proof all shows, that it did occur in Eastland County on the night of the marriage and not at another time. The rape was then a complete offense. Bigamy under the facts of this case, could not have then occurred, because as held in the Grigsby case, supra, and all of the decisions on the subject, it took not only the assent of the parties to the marriage, but it also took a continuous living together thereafter as husband and wife to constitute a marriage at common law, and thereby complete the offense of bigamy, so that appellant could have been prosecuted or convicted therefor. In other words, the rape was complete the night of the marriage and the act of sexual intercourse that night. Bigamy could not have been committed, or appellant guilty of bigamy, until and unless he lived with the girl for a considerable length of time thereafter with all the other concurrent and continuous acts necessary to show marriage. It is true, the

girl testified that they lived together some nine months thereafter, she supposing that they were husband and wife. But in March subsequently, some four months only after the pretended false marriage, appellant denied to his brothers expressly that he had married the girl. That was, so far as the record shows, the first time the matter came in question, and when it did, he immediately stated he had not married the girl.

But suppose it be conceded that the appellant by this transaction of pretended marriage alone or that and the subsequent living together for a few months with the girl, so as to indulge his sexual passion with her, thereby committed the offense of bigamy, then what is the law on the subject? It is clearly stated by Mr. Bishop in his 1 New Criminal Law, section 791, as follows: "One answerable for a criminal transaction may be holden for any crime, of whatever nature, which can be legally carved out of his entire offending. He is not to elect, but the prosecuting power is. If the evidence shows him to be guilty of a higher offense than he stands indicted for, or of a lower, or of one differing in nature, whether under a statute or at the common law, he can not be heard to complain,—the question being whether it shows him to be guilty of the one charged." That doctrine has been aptly and repeatedly announced and held by this court. It is tersely stated in Quitsow v. State, 1 Texas Crim. App., 47: "The prosecutor had a right to carve as large an offense out of this transaction as he could, yet must cut only once." Grisham v. State, 19 Texas Crim. App., 504; Sinco v. State, 9 Texas Crim. App., 338; Wright v. State, 17 Texas Crim. App., 152; Jackson v. State, 43 Texas, 421; Whitford v. State, 24 Texas Crim. App., 489; Mercer v. State, 17 Texas Crim. App., 452.

Therefore, the appellant having been guilty of rape, the State had the right to choose which offense it would prosecute for, whether for rape or bigamy, even if he was guilty of bigamy. He had no right to choose for which offense he should be prosecuted. The State alone had that right and having carved and convicted him of one, he can not complain that the State ought to have carved and convicted him for the other.

We did not hold in the original opinion in this case that the presumption of innocence did not prevail, nor did we hold that the presumption of guilt prevailed. By no strained construction, or otherwise, of the language in the original opinion, can we be made to say any such thing. The presumption of innocence is a legal presumption, but proof can be offered to show guilt, notwithstanding this presumption, and when that is done, and a jury on sufficient evidence, found him guilty, this presumption of innocence was done away with and no longer prevailed. And the evidence with all the facts and surrounding circumstances, proved in this trial, clearly and fully authorized the jury to believe, as it did, and found, that he had sexual intercourse with this girl the first night he slept with her in Eastland County, with all the other facts necessary to show his guilt. He is shown to be guilty notwithstanding the girl testified he did not have sexual intercourse with her that first night. The jury was in no way bound to believe her testimony on that

point, but from all the other facts and circumstances, could, as they did, believe and find he did have sexual intercourse with her that first night.

We expressly approve and adhere to the decisions in Lee v. State, supra, and Wilkinson v. State, supra. They correctly announce and hold the law on the question of rape by the character of fraud therein and herein shown.

The motion is overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE (dissenting).—1. If living together as husband and wife publicly and known of all men and so recognizing each other and so recognized in addition by all the family connections and relatives, and this for nearly a year and until his arrest, could show a common law marriage, the evidence constituted such common law marriage, and would have been a legal one but for the prior marriage and the recent decision of the Supreme Court so holds. I do not care to again review the facts. See Dumas v. State, 14 Texas Crim. App., 464, and all subsequent cases.

2. The State proved there was no intercourse in Eastland County where conviction occurred, by positive evidence of the prosecutrix. She was an unfriendly witness to and against defendant. Rape is absolutely dependent upon "penetration." See statute defining rape. The State not only failed to prove the case but absolutely disproved it. My brethren hold it could not be bigamy but only rape, and yet hold the State had the right to carve its case and could prosecute for rape or bigamy as officers saw proper. Much learning has been quoted in prevailing rehearing opinion that has no application to the case and made to do duty erroneously. I do not care to discuss the majority opinion further. This conviction is without authority of law or evidence, but against both.