STATE v. DOYLE EDEN alias JACK EDEN, Appellant.—No. 38061.—
169 S. W. (2d) 342.

Division Two, March 25, 1943.

*Roy McKittrick,* Attorney General, and *Tyre W. Burton,* Assistant Attorney General, for respondent.

LEEDY, P. J.—Convicted of bigamy, defendant appeals from the judgment sentencing him to a term of three years and six months in the penitentiary. He has filed no brief in this court, and we, therefore, look to the motion for a new trial for his assignments of error. Those sufficiently preserved for appellate review are limited to a challenge of the sufficiency of the evidence, and alleged prejudicial error in the giving and refusal of instructions. The ground of the first assignment is that it was not shown "that the defendant had theretofore been legally married to Edith Box Eden (the alleged first wife.)"

There is no dispute as to the fact that defendant went through the form of the two ceremonial marriages in question. The first of these was with Edith Box on July 20, 1939, in Barry County. He and Edith thereafter lived together and cohabited as man and wife at

Pierce City, Monett, and elsewhere until they finally separated in June, 1941. To this union was born one child, a boy, who was sixteen months old at the time of the trial in January, 1942. The state introduced the record of this marriage as it appears in the office of the Recorder of Deeds of Barry County. Such record was that required to be kept under Sec. 3366, R. S. '39 [Mo. R. S. A., sec. 3366.] It consisted of a copy of the license, and due return thereon (or certificate) by the officiating minister. The latter was filed six or seven days after the ceremony. The license and return are regular and valid on their faces.

On June 24, 1941, Edith being alive, defendant married Letta Pancake in Jasper County. The officiating minister testified to the fact that he performed this ceremony. The marriage certificate signed by him was introduced, and on its face, was likewise regular in all respects. The parties set up housekeeping at Joplin, and lived together as man and wife until about a month before the trial when defendant was arrested and charged with bigamy. Letta testified that as a result of this matrimonial cohabitation, she was then pregnant. Silas Pancake, Letta's father, testified that two days before the wedding he told defendant he heard he had been married, and said, ''Jack, are you a free man?'', and that defendant replied, ''I am. Edith, my first wife, got a divorce from me. . . . I am a clear man.''

The defense was somewhat obscure, as will appear from a reading of defendant's testimony. He was the only witness called on his part. His brief examination is reproduced in full (objections and rulings thereon omitted), as follows:

''DIRECT EXAMINATION.

Q. What is your name? A. Doyle Manley Eden.

Q. Do you have a nickname, Doyle? A. Yes, sir.

Q. What do they call you? A. Jack.

Q. Prior to your marriage ceremony with Edith Box, where did you obtain the license? A. H. E. Bradford in Monett.

Q. Do you know whether or not he is an officer of any kind? A. Justice of the Peace.

Q. What time of day did you go in there to get the license? A. At four-thirty in the afternoon.

Q. Just tell the jury what he did? [Objection and ruling.] A. Well, I walked in and told him I wanted some marriage license, and he said, all right, and he went to his desk, and pulled the drawer out and got the license and filled them out with the typewriter, and handed them to me and I paid him two and a half.

Q. Prior to your marriage to this lady here, where did you obtain the license and from whom? A. From Justice of the Peace, Armstrong.

Q. What did you pay him? A. Two and a half.

 "Q. Now, neither one of these Justices performed the marriage ceremony? A. No.

Q. Now, did you obtain a divorce from Edith Box? A. No, I thought as I couldn't live with both it was all right.

BY THE COURT: That will be stricken and the jury are instructed to disregard, it.

BY MR. FROST: That is all.

CROSS EXAMINATION.

Q. (By Mr. Bradley) I want to ask you a few questions, Jack; how old are you? A. Twenty-three. [Objection and ruling.]

Q. Well, all right, you say Bradford's office is in Monett? A. Yes.

Q. Who was present? A. I and Mr. Bradford.

Q. Was Miss Box with you? A. No.

Q. She didn't know anything about it? A. Yes, she knowed I was going to get them.

Q. She wasn't present? A. No.

Q. Now, when you got the one from Armstrong, who was present? A. Just me.

Q. Just you? A. Yes.

Q. And Letta Pancake was not with you? A. No, she wasn't with me."

There was no attack upon the regularity of the Barry County *record* as showing a ceremonial marriage between defendant and Edith duly solemnized under a license issued *by the Recorder of Deeds* of said county. The license is set out therein *in haec verba,* and concludes in this way: "Witness my hand as Recorder of Deeds with the Seal of Office hereto affixed at my office in Cassville, this 20th day of July, 1939. (Signed) Cecil Long, *Recorder of Deeds,* [Seal.]"

Sec. 4644, R. S. '39 [Mo. R. S. A., sec. 4644] defines the crime of bigamy as follows: "Every person having a husband or wife living, who shall marry another person, whether married or single, except in the cases specified in the next section, shall, on conviction, be adjudged guilty of bigamy," etc. The next section [4645, R. S. '39; Mo. R. S. A., sec. 4645] provides, "The preceding section shall not, by reason of any former marriage, extend to any person again marrying in either of the following cases: . . . or, third, where such former marriage shall have been dissolved by competent authority . . . ; *or fourth, where such former marriage shall have been declared void by competent authority;* . . . " (Italics ours.) Defendant did not rely on any of the exceptions contained in the latter section. Defenses thereunder have been referred to as affirmative defenses. [State v. Wilson, 312 Mo. 84, 278 S. W. 679. See, also, 7 Am. Jur., Bigamy, sec. 34; 10 C. J. S., Bigamy, sec. 16(2).]

936

■ There can be no doubt that the state, upon the facts outlined above, made out a case—and a strong one—unless it can be said that the first marriage was absolutely void because so declared by Sec. 3364, R. S. '39[1] [Mo. R. S. A., sec. 3364.] From defendant's testimony and instructions requested, we infer the latter is the contention made by him. "If the first marriage is declared null and void by statute, the defendant may show the facts in defense. without the production of a decree of court so declaring it. The rule is different with respect to marriages which are only voidable as distinguished from those which are mere nullities; a voidable marriage is valid and is dissolved by the decree of a competent tribunal." [7 Am. Jur., Bigamy, sec. 48.]

Sec. 3364 says "no marriage hereafter contracted shall be *recognized as valid unless*" a license for that purpose shall have been previously obtained from the officer authorized to issue the same. The same section further provides, "Common-law marriages hereafter contracted shall be *null and void.*" These provisions were enacted by the 51st General Assembly [Laws 1921, p. 468], by an amendment which added all of the matter now contained in said section following the second ■ comma therein. It is clear said amendment was designed to prohibit nonceremonial or common-law marriages, which until that time were sanctioned, notwithstanding the statute which then read, "Previous to any marriage in this state, a license for that purpose shall be obtained." [Sec. 7302, R. S. '19.] This is made manifest by the express words of the statute declaring all such marriages thereafter contracted to be "null and void." But the section itself contains an exception—that with relation to the want of authority in any person solemnizing a marriage "under the next preceding section, if consummated with the full belief on the part of the persons, so married, or either of them, that they were lawfully joined in marriage." But the "want of authority" therein specified has no reference to the matter of a license. It is not contended there was any invalidity in the first marriage other than as declared by Sec. 3364, and so we are not concerned with other sections which declare certain marriages "absolutely void," such as those between uncles and nieces, aunts and nephews, first cousins, etc.

---

[1]"Previous to any marriage in this state, a license for that purpose shall be obtained from the officer herein authorized to issue the same, and no marriage hereafter contracted shall be recognized as valid unless such license has been previously obtained, and unless such marriage is solemnized by a person authorized by law to solemnize marriages. Common-law marriages hereafter contracted shall be null and void: *Provided, however,* that no marriage shall be deemed or adjudged invalid, nor shall the validity thereof be in any way affected on account of any want of authority in any person so solemnizing the same under the next preceding section, if consummated with the full belief on the part of the persons, so married, or either of them, that they were lawfully joined in marriage." [Sec. 3364, R. S. '39, Mo, R. S. A., sec. 3364.]

[Sec. 3361]; nor, for the moment, with Sec. 3362 making like provision as to "all marriages, where either of the parties has a former wife or husband living, . . . unless the former marriage shall have been dissolved." As we construe the language of Sec. 3364, "no marriage hereafter contracted shall be recognized as valid," etc., it was not intended to render void *ab initio* a ceremonial marriage solemnized under the forms of, and in apparent compliance with, the marriage statutes, as in the case at bar. As to such marriage (even assuming the truth of defendant's testimony touching the circumstances under which he procured the license), it is our conclusion the language just quoted, when taken in connection with the further provision that "no marriage shall be deemed or adjudged invalid" [for the reason therein specified] can, in no event, mean anything more than it shall not be recognized as valid on judgment, and certainly not that it is *ipso facto* and utterly void. In other words, the most that can be said of the defective issuance of the license, if such it was, is that it rendered the marriage merely voidable, and it was therefore to be treated as valid until declared void by competent authority; and a voidable marriage will support an indictment for bigamy. [10 C. J. S., Bigamy, sec. 4; 7 Am. Jur., Bigamy, sec. 9.] We express no opinion as to whether, on the facts assumed, the defect was so gross as to have justified a decree of nullity in a proceeding brought for that purpose. It is enough to say it had not been so declared, and thus brought within the exception created by the fourth clause of Sec. 4645, supra. It follows that the challenge of the sufficiency of the evidence is not well taken. This holding necessarily disposes of the assignment charging error in the giving of instruction No. 6, on the part of the state. The instruction told the jury "that to constitute a lawful marriage . . . the parties to the marriage in question must have procured a license from the Recorder of Deeds . . . and then have had such marriage performed by an authorized minister of the Gospel," and concluded by submitting the hypothesis of an honest belief on their part that the instrument purporting to be a marriage license, which they procured and presented to the minister, was a valid marriage license, and thereafter cohabiting and living together as man and wife, as constituting a lawful marriage. Defendant's attack upon the instruction is ironical. He complains such a "theory would open an avenue of evasion of the marriage laws of this state and enable persons to perpetrate fraud upon others by making one or both of the contracting parties believe that a marriage license had been duly and legally issued." Even if erroneous, said instruction could not have been prejudicial to defendant, in view of our holding on the sufficiency of the evidence.

There was no error in the refusal of defendant's instruction No. 3. It told the jury, in substance and effect, the defendant should be

938

acquitted unless the jury found and believed from the evidence that "the defendant or Letta Pancake did apply and obtain from the *Recorder of Deeds* a proper marriage license before the solemnization of said marriage between these parties." If the marriage to Letta was bigamous, it was absolutely void under Sec. 3362, so it would make no difference whether it would also have been invalid for want of a proper license, thus introducing two elements of illegality instead of one. An accurate statement of the applicable rule is that ". . . . it is the appearing to contract a second marriage and going through the ceremony which constitutes the crime of bigamy; otherwise it could never exist in ordinary cases, as a previous marriage always renders null and void a marriage that is celebrated afterward by either of the parties during the lifetime of the other." [7 Am. Jur., Bigamy, sec. 13.]

We have examined the other complaints directed against the court's instructions, but find them without merit. The judgment should be affirmed. It is so ordered. All concur.