EUGENE N. DAVIS *vs.* ETHEL B. SELLER.

Norfolk. October 7, 1952. — November 3, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Marriage,* Validity, Annulment, Foreign marriage. *Conflict of Laws.*
*Evidence,* Opinion: expert.

A marriage contracted in New Hampshire between parties residing and intending to continue to reside in Massachusetts, the man being insane and incapable of understanding the nature and effect of his acts and the woman having reason to believe he was insane, was void in Massachusetts under G. L. (Ter. Ed.) c. 207, §§ 5, 10, irrespective of the New Hampshire law and must be annulled on a libel brought in behalf of the man against the woman. [388]

The record did not show error in certain hypothetical questions asked of expert medical witnesses as to the mental condition of a person at a particular time. [388–389]

LIBEL, filed in the Probate Court for the county of Norfolk on August 10, 1951.

The case was heard by *Hickey, J.*

*James McCaffrey,* for the libellee.

*Reuben L. Lurie, (Margaret Comey* with him,) for the libellant.

COUNIHAN, J. This is a libel for the annulment of a marriage between Eugene N. Davis of Brookline and Dr. Ethel B. Seller, an osteopathic physician, of Boston, G. L. (Ter. Ed.) c. 207, § 14, which comes here upon an appeal from a decree of the Probate Court annulling the marriage. The libel for annulment was brought by the conservator of Davis who was admitted by the court to prosecute the libel as the next friend of Davis. G. L. (Ter. Ed.) c. 208, § 7. The evidence is reported in full without any findings of facts by the judge except those recited in the decree.

We have repeatedly said that the practice upon probate appeals, including those upon libels for divorce or annulment, is the same as in equity in so far as practicable and applicable. It has also been established that it is our duty to examine the evidence and to decide the case upon our own judgment, not only as to questions of law but as to questions of fact, giving due weight to the findings of the judge which will not be reversed unless they are plainly wrong. The entry of a decree imported the finding of every fact essential to support it. *Levanosky* v. *Levanosky*, 311 Mass. 638, 639, 642. *Whitney* v. *Whitney*, 325 Mass. 28, 29.

On the evidence it could be found that on April 20, 1951, Reuben L. Lurie, Esquire, was duly appointed conservator of Davis by reason of the incapacity of Davis through advanced years or mental weakness. Davis was then ninety-two years old and Dr. Seller was about sixty-nine.

On April 19, 1951, the day before the hearing on the petition for the appointment of a conservator, Dr. Seller and Davis went to Nashua, New Hampshire, and filed a notice of their intention to wed. On April 24, 1951, accompanied by several immediate relatives she went again with Davis to Nashua and on that day they were married. She admitted that at that time Davis was forgetful and suffering from hallucinations of a serious nature. It is conceded that at the date of the marriage both parties resided in our Com-

monwealth. On the occasion of their visits to Nashua they both returned to this Commonwealth on the same day, he to a nursing home in Brookline where he had been living and she to her home in Boston.

On the testimony of five reputable physicians, three of whom qualified as experts in psychiatry, it could be found that Davis was insane on April 19, 1951, and on April 24, 1951, and was not capable of understanding the nature and effects of anything he did on either day. It is significant that three of the physicians who testified were employed to examine Davis by earlier counsel for Dr. Seller.

It could be further found that Dr. Seller, on her own testimony, frequently advised Davis to keep the marriage secret, and that she urged him to burn or destroy her letters to him in which reference was made to the marriage. She admitted too that she was aware of the fact that a libel for the annulment of a marriage on the grounds of insanity had to be instituted during the lifetime of the parties, G. L. (Ter. Ed.) c. 207, § 5, as amended by St. 1941, c. 194, § 18A, and that if no such libel was successful, she as his widow, under our statutes, would inherit the bulk of his estate.

As we view it the sole question to be determined here is whether or not the marriage entered into by the parties in Nashua on April 24, 1951, is a valid one under applicable statutes of our Commonwealth.[1]

We cannot agree with the contention of the libellee that the validity of the marriage should be determined by a New

---

[1] G. L. (Ter. Ed.) c. 207, § 5, as amended: "An insane person, an idiot or a feeble-minded person under commitment to an institution for the feeble-minded, to the custody or supervision of the department of mental health, or to an institution for mental defectives, shall be incapable of contracting marriage. The validity of a marriage shall not be questioned by reason of the insanity, idiocy or of the feeble-mindedness aforesaid of either party in the trial of a collateral issue, but shall be raised only in a process instituted in the lifetime of both parties to test such validity."

G. L. (Ter. Ed.) c. 207, § 10: "If any person residing and intending to continue to reside in this commonwealth is disabled or prohibited from contracting marriage under the laws of this commonwealth and goes into another jurisdiction and there contracts a marriage prohibited and declared void by the laws of this commonwealth, such marriage shall be null and void for all purposes in this commonwealth with the same effect as though such prohibited marriage had been entered into in this commonwealth."

Hampshire statute. [1]  In our judgment the New Hampshire statute has no application.  The opinion in the case of *Levy* v. *Downing*, 213 Mass. 334, 335, cited by the libellee to support her contention, recognized the force of R. L. c. 151, §§ 5 and 10, the earlier statutes subsequently embodied in G. L. (Ter. Ed.) c. 207, §§ 5 and 10, but says, "The present case does not come within these statutes, and therefore is governed by the general law."

We hold that c. 207, §§ 5 and 10, are applicable to the facts in the present situation.

It was early said by our court that "Every sovereignty exercises the right of determining the status or condition of persons found within its jurisdiction. . . . The comity of a state will give no effect to foreign laws which are inconsistent with or repugnant to its own policy, or prejudicial to the rights and interests of those who are within its jurisdiction." *Woodworth* v. *Spring*, 4 Allen, 321, 323.  Compare *Welker* v. *Welker*, 325 Mass. 738, 741.

The facts as we find them are that both parties were residing and intended to continue to reside in this Commonwealth when the marriage was entered into in Nashua; that Davis was insane at that time and not capable of understanding the marriage contract; that Dr. Seller realized his condition or had good reason to believe he was insane; and that she went to New Hampshire with him to contract a marriage with him which would have been prohibited and void if performed in our Commonwealth.

In these circumstances the marriage between the parties was null and void for all purposes in this Commonwealth and the decree annulling the marriage was properly entered. *Levanosky* v. *Levanosky*, 311 Mass. 638, 641.

There is no merit in the exceptions of the libellee to the allowance of certain hypothetical questions as to the mental condition of Davis at the time of the marriage which were

---

[1] Revised Laws of New Hampshire (1942) c. 338, § 10: "Marriage. No woman under the age of forty-five years, or a man of any age, — except he marry a woman over the age of forty-five years, — either of whom is epileptic, imbecile, feeble-minded, idiotic or insane, shall hereafter intermarry or marry any other person within this state."

put to the medical experts who examined Davis before and after the date of the marriage. The questions were based upon an examination of Davis by the expert, a diagnosis of his mental condition, and a recital of his mental history. *Hastings* v. *Rider,* 99 Mass. 622, 627.

If the libellee desired to have the observations of the minister who performed the ceremony, the nurse who gave the blood tests and others incorporated in hypothetical questions, her counsel could have done this on cross-examination. Compare *Greene* v. *Cronin,* 314 Mass. 336, 342.

It follows that the decree must be affirmed. Costs and expenses of this appeal may be allowed to the libellant or his counsel in the discretion of the Probate Court. G. L. (Ter. Ed.) c. 208, § 38, as appearing in St. 1933, c. 288.

*So ordered.*

