555 P.2d 895

**Randall H. GRANT, Petitioner,**

**v.**

**The SUPERIOR COURT IN AND FOR the COUNTY OF PIMA, and the Honorable Duane P. Smith, Court Commissioner thereof, Respondent,**

**and**

**Aurelia Rosales GRANT, Real Party in Interest.**

**No. 2 CA–CIV 2277.**

Court of Appeals of Arizona, Division 2.

Sept. 7, 1976.

Rehearing Denied Sept. 29, 1976.

Petition for Review Denied Oct. 26, 1976.

428

Johnson, Hayes & Dowdall, Ltd. by Donald E. Gabriel, Tucson, for petitioner.

Lieberthal & Kashman, P. C. by David H. Lieberthal, Tucson, for real party in interest.

HOWARD, Chief Judge.

Petitioner has been ordered to pay temporary spousal maintenance and other sums, all flowing from a common law marriage which he claims never occurred. He alleges an excess of the trial court's jurisdiction in refusing to dismiss the action. We choose to assume jurisdiction of the matter and, since a court only has jurisdiction to award spousal maintenance in a dissolution proceeding governing a valid marriage and the situation before us is not a valid marriage, we believe the trial court did exceed its jurisdiction and we vacate its order.

The real party in interest testified at the order to show cause proceeding, held to determine if the temporary support should issue, that she and petitioner went to El Paso, Texas, with another couple from Tucson in March 1969. She stated that when they arrived in El Paso, they went to a motel for a few hours, entered into an agreement to be husband and wife and consummated the "marriage". They then left the motel and told the other couple they were married. The parties spent the rest of the day in Juarez, Mexico, and left there for Tucson. They have lived in Tucson since that time as husband and wife. It was shown that petitioner bought wedding rings for the real party in interest

and that they held themselves out at all times in Arizona as husband and wife.

The only question for us to resolve, then, is whether the parties are actually married or whether they have a meretricious relationship not subject to dissolution ′ by the courts of this state and not subject to consequent support obligations.

■ Although Arizona does not authorize common law marriages, it will accord to such a marriage entered into in another state the same legal significance as if the marriage were effectively contracted in Arizona. *In re Estate of Trigg*, 3 Ariz. App. 385, 414 P.2d 988 (1966), aff'd, 102 Ariz. 140, 426 P.2d 637 (1967). In *Trigg*, our Supreme Court said a marriage valid where made is valid in Arizona. Also, *Gradias v. Gradias*, 51 Ariz. 35, 74 P.2d 53 (1937). And in *Atkinson v. Valley National Bank of Arizona*, 22 Ariz.App. 297, 526 P.2d 1252 (1974) this court said that absent a showing of intent to evade Arizona's statutes, a marriage valid in another state will be recognized in Arizona. In addition, A.R.S. Sec. 25–112 specifically provides for recognition of a common law marriage if valid in another state.

■ Our test, then, is whether the present parties validly contracted a common law marriage in the State of Texas. The elements of such a relationship in Texas are (1) an agreement presently to be husband and wife; (2) living together and cohabiting as husband and wife; (3) holding each other out to the public as such. *Flavin v. Flavin*, 523 S.W.2d 94 (Tex.Civ.App.1975) ; *Humphreys v. Humphreys,* 364 S.W.2d 177 (Tex.1963).

The agreement was established by the testimony of the real party in interest. The holding out was also established by her testimony as she stated that after their brief stay in the El Paso motel, they emerged and told their friends they were married. The problem facing us is with the second element of the Texas common law marriage requirement, i.e. cohabiting together as husband and wife.

■ The real party in interest would have us believe that that language is satisfied by the three-hour stay in the motel and the open and notorious living together as husband and wife in Arizona since. This does not satisfy the requirement.

■ In order to constitute a valid, common law marriage, there must be a continuous living together as husband and wife. *Melton v. State,* 71 Tex.Cr.R. 130, 158 S.W. 550 (1913). Therefore, the mere sexual relations between the parties in Texas did not suffice to lend validity to their relationship. Cohabitation means dwelling together as husband and wife, and includes the many facets of married life in addition to sexual relations. 38 Tex.Jur.2d Marriage, Sec. 15, p. 50.

■ The "living together" necessary herein took place in Arizona, not in Texas. The real party in interest states that domicile should not be made a requirement. The Texas Family Code, Subchapter E., Sec. 1.91 V.T.C.A. states :

"Proof of Certain Informal Marriages (a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that :

(1) a declaration of their marriage has been executed under Sec. 1.92 of this code ; or

(2) they agreed to be married, and after the agreement they lived together *in this state* as husband and wife and there represented to others that they were married." (Emphasis added)

It is agreed between the parties that this statute was enacted in 1970 and therefore does not affect the marriage question before us. Before the statute, common law was in effect. The Texas cases fall into line with Kentucky cases, however, which are exemplified by *Kennedy v. Damron,* 268 S.W.2d 22 (Ky.1954) which is discussed in Clark, Law of Domestic Relations, Sec. 2.4, p. 57 :

". . . The objection usually advanced against common law marriage is

that it leads to fraud and uncertainty in the most important of human relationships. Presumably this is the reason why Kentucky and other states have abolished it. But Kentucky says in this case, we will recognize such a marriage when contracted in another state, provided the parties establish a connection with the other state of a kind and duration which will minimize the evils of common law marriage. It is not enough that they made occasional visits to Ohio, since such visits would not furnish convincing evidence of marital cohabitation in Ohio. They must spend sufficient time there to give rise to the testimony of friends, neighbors, acquaintances that they had publicly assumed *in Ohio* the relationship of husband and wife." (Emphasis in original)

It is not the requirement of domicile, as the real party in interest alleges, that makes the difference, but rather the connection by the couple with the state that recognizes common law marriages. The only connection these parties had with the State of Texas was as mere transients. Our Arizona Supreme Court said in *In re Mortenson's Estate*, 83 Ariz. 87, 316 P.2d 1106 (1957):

"A marriage declared void by our statute cannot be purified or made valid by merely stepping across the state line for purpose of solemnization. We cannot permit the public policy of this state to be defeated by such tactics." 83 Ariz. at 90, 316 P.2d at 1107.

In *Tarter v. Medley*, 356 S.W.2d 255 (Ky.1962), it was said that where the parties are but transients, common law marriage is not established. Such a decision was also rendered in *Consolidated Underwriters v. Kelly*, 15 S.W.2d 229 (Tex.Com. App.1929) and we think the parties in this case did not establish a valid common law marriage under the laws of Texas because they did not cohabit together as husband and wife in that state. To allow them to fulfill that requirement in Arizona would be frustrating the laws of Texas and violating the spirit of the law of Arizona which is willing to recognize a common law marriage which is validated in another state. We therefore find the judgment of the trial court to be an excess of jurisdiction and vacate the order which provided for temporary support and other payments.

Relief granted.

KRUCKER and HATHAWAY, JJ., concur.