**Darlene (Darcy) Bannigan HESINGTON, Plaintiff-Appellant,**

v.

**ESTATE OF Charles W. HESINGTON, Deceased, Defendant-Respondent.**

No. 12166.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 29, 1982.

Motion for Rehearing and to Transfer to Supreme Court Denied Feb. 22, 1982.

Paul L. Bradshaw, David C. Agee, Neale, Newman, Bradshaw & Freeman, Springfield, for plaintiff-appellant.

John W. Housley, Johnson, Lowther & Cully, Springfield, for defendant-respondent.

MAUS, Chief Justice.

By their excellent briefs and oral arguments the parties have presented to the court a question, not heretofore directly answered by an appellate court of this state, concerning the validity of a common-law marriage. Charles W. Hesington died March 8, 1980, a resident of Greene County, Missouri. On June 4, 1980, Letters of Administration With Will Annexed were issued upon his estate by the Probate Division of the Circuit Court of Greene County, Missouri. In this proceeding the appellant seeks to establish that she is the widow of the decedent by virtue of a common-law marriage contracted in Tulsa, Oklahoma, on April 8, 1978. The Probate Division of the Circuit Court denied that relief.

It is not necessary to set forth in detail the evidence in support of and in derogation of that asserted common-law marriage. In view of the findings of the trial court, it is sufficient to review the evidence favorable to that claim. The favorable evidence is summarized as follows. The appellant and the decedent were before, at the time of, and after the asserted common-law marriage domiciled in and actually resided in Greene County, Missouri. The appellant and the decedent each had an interest in attending dog shows. Before April 8, 1978, they began dating. They attended numerous dog shows together. On April 8, 1978, they made a business trip to Tulsa, Oklahoma, to see one Donna Wainwright. They related to her that during the trip, without witnesses or solemnization, they exchanged marriage vows. The following week they attended a dog show in Tulsa in a mobile home. They repeated their marriage vows to a friend staying in the next mobile home. They told the friend that they had been married the preceding weekend. Thereafter, the trial court found they "were known to cohabitate [sic], refer to each other as husband and wife, and otherwise publicly hold themselves out as such".

From these findings the trial court concluded the appellant and the decedent "spoke words and acted in such a manner

that had they been residents of the State of Oklahoma on April 8, 1978, they would have met the requirements of a common-law marriage". However, the trial court then reviewed the statutes and the case law of this state and concluded that Missouri will not recognize a common-law marriage consummated in a common-law state, "while its residents only temporarily leave the state to attempt such marriage and immediately return". The trial court entered its judgment that the alleged marriage was null and void and of no force nor effect.

Section 451.040.5, RSMo 1978, provides: "Common-law marriages hereafter contracted shall be null and void". This provision was adopted in 1921. Laws of Missouri 1921, page 468. It has been consistently held that a common-law marriage contracted in Missouri after that date is null and void. *State v. Eden,* 350 Mo. 932, 169 S.W.2d 342 (1943); *Rone's Estate v. Rone,* 218 S.W.2d 138 (Mo.App.1949).[1]

43 Okla.St.Anno. § 4 provides that no person shall contract a marriage in Oklahoma without a license being first issued. Subsequent sections contain provisions concerning the issuance of a license, its contents and endorsement and return. 43 Okla.St.Anno. § 7 provides: "[a]ll marriages must be contracted by a formal ceremony" as prescribed in that section. Nevertheless, common-law marriages contracted in Oklahoma are recognized by the courts of that state. *Daniels v. Mohon,* 350 P.2d 932 (Okl.1960).[2] The requirements of a common-law marriage in Oklahoma have been said to be:

(1) an actual and mutual agreement between the spouses to be husband and wife;

(2) a permanent relationship;

(3) an exclusive relationship;

(4) cohabitation as man and wife;

(5) the parties to the marriage must hold themselves out publicly as husband and wife. *Estate of Phifer,* 629 P.2d 808, 809 (Okl.App.1981).[3] (Footnotes Omitted).

This case presents a narrow conflict of laws question. The issue presented is circumscribed by the following facts. As stated, the appellant and the decedent were before, at the time of, and after the asserted common-law marriage domiciled in and actually resided in the state of Missouri. The asserted common-law marriage was without witnesses and was not based upon any formal ceremony. The parties made no effort to comply with the Oklahoma statutes providing for the issuance of a marriage license and the formalities of a marriage. The asserted marriage was what may be termed a strictly common-law marriage.

■ It has often been said by the courts of this state that the validity of a marriage is to be determined by the law of the state where it was contracted. *Hartman v. Valier & Spies Milling Co.,* 356 Mo. 424, 202 S.W.2d 1 (1947); *Doyle v. Doyle,* 497 S.W.2d 846 (Mo.App.1973); *Taylor v. Taylor,* 355 S.W.2d 383 (Mo.App.1962). Perhaps as a result it has often been assumed that even if the parties are domiciled in and actually reside in this state, Missouri is required to recognize a marriage which was valid where contracted even though it would not be valid had it been contracted in Missouri. That is not true.

---

1. The issue in this case is to be distinguished from the proof of a ceremonial marriage by cohabitation and reputation. *In re Estate of Tomlinson,* 493 S.W.2d 402 (Mo.App.1973).

2. Two Oklahoma cases indicate that whether or not a common-law marriage contracted in Oklahoma will be recognized is dependent upon the law of the domicile of the parties. *Lopez v. Bonner,* 439 P.2d 687 (Okl.1967); *Red Eagle v. Cannon,* 201 Okl. 511, 208 P.2d 557 (1949). "Every sovereign state may determine the status of those having their domicile within its territory, and the law of the domicile of the

parties governs the status of marriage." *Ross v. Bryant,* 90 Okl. 300, 217 P. 364, 365 (1923).

3. It has been held the cohabitation and holding out necessary to establish a common-law marriage must occur in the state that recognizes common-law marriage. *Grant v. Superior Ct., in and for County of Pima,* 27 Ariz.App. 427, 555 P.2d 895 (1976); *Kennedy v. Damron,* 268 S.W.2d 22 (Ky.1954); *Laikola v. Engineered Concrete,* 277 N.W.2d 653 (Minn.1979); *Andrews v. Signal Auto Parts, Inc.,* 492 S.W.2d 222 (Tenn.1972).

A state is fully sovereign with respect to the control and regulation of marriages for the purpose of promoting public morality and the moral and physical development of the parties, and every state has the power to determine not only who shall assume, but also who shall occupy, the matrimonial relationship within its borders. 52 Am.Jur.2d Marriage § 79, page 929. (Footnotes Omitted).

Also see *In re Duncan's Death,* 83 Idaho 254, 360 P.2d 987 (1961); *Davis v. Seller,* 329 Mass. 385, 108 N.E.2d 656 (1952); *Hartman v. Valier & Spies Milling Co.,* supra; In re *Shun T. Takahashi's Estate,* 113 Mont. 490, 129 P.2d 217 (1942); *Ross v. Bryant,* 217 P.2d 364 (Okl.1923). This is consistent with Restatement (Second) of Conflict of Laws § 283(1) (1971) which provides: "The validity of a marriage will be determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the marriage under the principles stated in § 6." [4] However, as a matter of comity, Missouri will recognize a marriage valid where contracted unless to do so would violate the public policy of this state. This is consistent with Restatement (Second) of Conflict of Laws § 283(2) (1971) which provides: "(2) A marriage which satisfies the requirements of the state where the marriage was contracted will everywhere be recognized as valid unless it violates the strong public policy of another state which had the most significant relationship to the spouses and the marriage at the time of the marriage."

The issue is whether or not it is against the public policy of this state to recognize a marriage of parties, domiciled in and actually residing in Missouri, contracted in a strictly common-law manner, while on a temporary sojourn in Oklahoma. Similar issues have been decided by many other states. In expressing the majority view in applying New Jersey Law, the U.S. Court of Appeals, 3rd Circuit, said:

But where the parties, while retaining their domicile in one state, pay a temporary visit to another state and there enter into a marriage which would not be recognized by the law of the state of their domicile if entered into therein, the latter state does not always look to the law of the place of the marriage to determine its validity. On the contrary, when the state of their domicile has a strong public policy against the type of marriage which the parties have gone to another state to contract, which policy is evidenced by a statute declaring such marriages to be void, the former state as the one most interested in the status and welfare of the parties will ordinarily look to its own law to determine the validity of the alleged marriage. *Metropolitan Life Insurance Company v. Chase,* 294 F.2d 500, 503–504 (3rd Cir.1961).

For cases involving factual situations similar to this case in which the validity of a common-law marriage was denied see *Grant v. Superior Ct., in and for County of Pima,* 27 Ariz.App. 427, 555 P.2d 895 (1976) and *Vaughn v. Hufnagel,* 473 S.W.2d 124 (Ky.1971). Also see *Stevens v. United States,* 146 F.2d 120 (C.C.A.Okl.1944); *Marek v. Flemming,* 192 F.Supp. 528 (D.C.Tex. 1961); *In re Enoch's Estate,* 52 Ill.App.2d 39, 201 N.E.2d 682 (1964); *Kennedy v. Damron,* 268 S.W.2d 22 (Ky.1954). Other cases are collected in *Laikola v. Engineered Concrete,* 277 N.W.2d 653, 655 (Minn.1979) in which the court concluded: "Only a few courts have actually held that residents of a state, which prohibits common-law marriages, may temporarily leave the state without taking up a new residence and consummate a common-law marriage elsewhere". For cases recognizing such common-law marriages see *Tatum v. Tatum,* 241 F.2d 401 (9th Cir.1957); *Matter of Pecorino,* 64 A.D.2d 711, 407 N.Y.S.2d 550 (1978). A statute prescribing that a marriage valid where celebrated is valid everywhere was involved in *Gallegos v. Wilkerson,* 79 N.M. 549, 445 P.2d 970 (1968). A distinction has been recognized where the

---

**4.** The most significant contacts principle has been adopted in regard to the application of a guest statute in a tort action. *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. banc 1969).

parties actually resided in the common-law jurisdiction even though they were not domiciled therein. *Metropolitan Life Insurance Company v. Holding,* 293 F.Supp. 854 (D.C.Va.1968); *Walker v. Yarbrough,* 257 Ark. 300, 516 S.W.2d 390 (1974). The same is true where there was a formal ceremony without a license or with a license that had been improperly issued. Annot., Solemnized Marriage Without License, 61 A.L.R.2d 847 (1958). Also see *State v. Eden,* supra. It is also true where there was a ceremonial marriage to which there was a legal impediment, which impediment was not known to at least one of the parties, a common-law marriage has been recognized upon removal of that impediment. *Metropolitan Life Insurance Company v. Holding,* supra. Also see *Old Republic Insurance Company v. Christian,* 389 F.Supp. 335 (D.C. Tenn.1975).

The public policy of this state in regard to the recognition of the strictly common-law marriage in question has not been declared by the Supreme Court. Nor has the issue been dealt with decisively by the Court of Appeals. In *Hodge v. Conley,* 543 S.W.2d 326, 330 (Mo.App.1976) the court observed that Oklahoma, "where the 1966 marriage occurred and presumably where the parties then lived, recognized at that time and still recognizes common-law marriages". In *Pope v. Pope,* 520 S.W.2d 634 (Mo.App.1975) at least one of the parties was apparently a resident of Kansas as he had an apartment in that state. In *McGrath v. McGrath,* 387 S.W.2d 239 (Mo. App.1965), the court refused to recognize a Texas common-law marriage and observed that the parties were domiciled in and residents of Missouri and that there was no new agreement of marriage in Texas. In *Preston v. Preston,* 342 S.W.2d 956, 958 (Mo.App.1961) in denying the validity of a Kansas common-law marriage the court observed, "[i]n the first place, every Kansas case examined is a case where the parties have been actual bona fide residents of

Kansas, and not merely transient workers, whose actual permanent residence is shown to be in another state".

■ "Both statutes and judicial decisions have a bearing in ascertaining the public policy of a state, but statutes are the very *highest evidence of public policy* and binding on the courts". *Brawner v. Brawner,* 327 S.W.2d 808, 812 (Mo. banc 1959). (Emphasis Added). It is significant that § 451.-040.5 expressly declares that "common-law marriages hereafter contracted shall be *null* and *void*". (Emphasis Added). *State v. Eden,* supra; *In re Guthery's Estate,* 205 Mo.App. 664, 226 S.W. 626 (1920). Also see *Metropolitan Life Insurance Company v. Chase,* supra, 294 F.2d 500.[5] Those domiciled and residing in Missouri are most often married in Missouri. Without a doubt, one of the purposes of § 451.040.5 is to require some degree of solemnity and reliability in establishing a marriage of those domiciled in and residing in Missouri. *State v. Eden,* supra. To forbid a common-law marriage in this state but recognize a strictly common-law marriage of domiciliaries and residents of Missouri on a sojourn in a common-law state, of which there are several, would defeat that purpose. The public policy declared by § 451.040.5 must be consistent with its purpose. *State v. Miles Laboratories,* 365 Mo. 350, 282 S.W.2d 564 (banc 1955). The judgment of the Probate Division of the Circuit Court of Greene County is affirmed.

PREWITT, P.J., and HOGAN and BILLINGS, JJ., concur.

---

5. "Because of this provision making common-law marriage null and void, we hold that Minnesota residents may not enter into a valid common-law marriage by temporarily visiting a state which allows common-law marriages." *Laikola v. Engineered Concrete, supra,* n. 3, 277 N.W.2d at p. 663.