NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

DEBRA GRIEGO, *Petitioner/Appellant*,

*v.*

ANTHONY DIDOMENICO, *Respondent/Appellee*.

No. CV 22-0113 FC
FILED 10-11-2022

Appeal from the Superior Court in Maricopa County
No. FN2021-001614
The Honorable Mark H. Brain, Judge

**AFFIRMED**

COUNSEL

Alcock & Associates, Phoenix
By David K. Le Lievre
*Counsel for Petitioner/Appellant*

The Sampair Group PLLC, Glendale
By Patrick S. Sampair
*Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1          The superior court dismissed Debra Griego's dissolution petition after finding that the parties did not have a valid common-law marriage under Colorado law. We find no reversible error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          Griego and Anthony DiDomenico began living together in 1977 in Colorado. That same year, they had a child. Over the years, they moved between Colorado and Kansas and eventually moved to Arizona in 2000. Griego petitioned for dissolution, arguing the parties had a valid common-law marriage in Colorado. DiDomenico moved to dismiss, claiming no marriage existed.

¶3          The superior court bifurcated the proceedings to address whether the parties had a common-law marriage. The court ordered the parties to disclose all documents relevant to that issue within one week and exchange all exhibits five business days before the September 2, 2021, hearing. Both attorneys agreed to the schedule. But Griego untimely disclosed her proposed exhibits around 5:00 p.m. on August 31, 2021. DiDomenico objected when Griego offered the untimely disclosed exhibits at the hearing. The court gave Griego the choice of paying a monetary sanction and continuing the hearing so DiDomenico could review the exhibits or proceeding without the exhibits. Griego opted to proceed without the exhibits.

¶4          The superior court found that DiDomenico never intended to enter a marital relationship. The court detailed the conflicting evidence and concluded that "their conduct was more consistent with unmarried cohabitation than a common-law marriage." Although the court awarded attorney's fees to DiDomenico in an amount to be determined, the court found no just reason for delay and entered judgment under Arizona Rule of Family Law Procedure ("ARFLP") 78(b). Griego unsuccessfully moved for relief, arguing the court misapplied Colorado law and her exhibits were

erroneously excluded. Griego appealed these rulings. The court later entered a judgment awarding attorney's fees to DiDomenico. Griego did not appeal the attorney's fees judgment.

¶5 We have jurisdiction over the appeal from the dismissal order under A.R.S. § 12-2101(A)(1). The denial of the motion for relief is not appealable because the award of attorney's fees related to that motion remained outstanding. *See* ARFLP 78(b). Nor did Griego file a second amended notice of appeal after the attorney's fees judgment. Thus, we lack jurisdiction to consider the order denying the motion for relief and the fee award. *See Dabrowski v. Bartlett*, 246 Ariz. 504, 511, ¶ 13 (App. 2019) (An appellate court has an independent duty to determine whether it has jurisdiction.).

## DISCUSSION

### A. The Superior Court Properly Excluded Griego's Untimely Disclosed Evidence.

¶6 Griego did not disclose her exhibits on time. When she offered the exhibits at the hearing, DiDomenico objected. The superior court recognized the exhibits were important to Griego's case. The court proposed a continuance to allow DiDomenico to review the exhibits, but Griego would have to pay DiDomenico's attorney's fees for that hearing as a sanction. Instead, Griego opted to proceed without the exhibits. When questioning DiDomenico, Griego's attorney offered the excluded exhibits to impeach his testimony. The court ruled that no disclosure exception applied to impeachment evidence and again excluded the exhibits. Griego contends the superior court erred by excluding the exhibits.

¶7 Whether to admit untimely disclosed evidence is a discretionary decision for the superior court. *Allstate Ins. Co. v. O'Toole*, 182 Ariz. 284, 287 (1995); *Packard v. Reidhead*, 22 Ariz. App. 420, 423 (1974). We will affirm the ruling absent an abuse of discretion or legal error. *See Girouard v. Skyline Steel, Inc.*, 215 Ariz. 126, 129, ¶ 10 (App. 2007).

¶8 The superior court has the discretion to sanction a party who violates a discovery order. *See* ARFLP 65(b). Sanctions may include, but are not limited to, the exclusion of evidence or staying the proceedings until the order is followed. *See* ARFLP 65(b)(1). The court may also order the disobedient party to pay the other party's "reasonable expenses, including attorney fees, caused by the failure, unless the failure was in good faith or other circumstances make an award of expenses unjust." ARFLP 65(b)(2).

¶9 The superior court proposed a continuance if Griego paid the attorney's fees DiDomenico incurred for having to appear at the hearing as a sanction for the disclosure violation. Griego did not offer good cause for the late disclosure, nor did she argue that imposing the monetary sanction was unjust. The court, therefore, properly exercised its discretion by offering to continue the hearing subject to a financial sanction or proceeding without the untimely disclosed exhibits. Having agreed to proceed without the exhibits, Griego cannot now object to the consequences of her choice. As a result, she has waived any objection to excluding the exhibits. *See Valley Nat'l Bank of Ariz. v. Meneghin*, 130 Ariz. 119, 122 (1981) ("Any irregularity in procedure may be waived if a party expressly or implicitly consents to it, as by acquiescing or failing to object to the procedure.").

¶10 Griego argues the superior court abused its discretion by excluding the exhibits as impeachment evidence even though they were precluded in her case-in-chief. But she has shown no exception for the admissibility of precluded evidence for impeachment purposes.[1] To allow Griego to have her exhibits admitted as impeachment evidence would render the original exclusion meaningless, particularly where the exclusion was imposed as a sanction. Griego chose to proceed without the exhibits and declined the court's offer to continue the hearing with a monetary sanction. That decision binds her.

¶11 DiDomenico asks this court to strike the portions of Griego's opening brief that referred to the excluded exhibits. Because we have upheld the exclusion of the exhibits, we grant DiDomenico's motion to strike and do not consider the exhibits in deciding if a common-law marriage existed under Colorado law.

---

[1] We note that in *Helena Chemical Co. v. Coury Bros. Ranches Inc.*, 126 Ariz. 448, 452 (App. 1980), this court distinguished substantive and impeachment evidence for disclosure purposes, but ultimately held evidence that serves both substantive and impeachment purposes must be disclosed. The continued validity of *Helena* is questionable because the disclosure exception was based on a repealed uniform rule of practice. We need not decide that issue today because the excluded exhibits were substantive despite Griego offering them for impeachment purposes.

**B.** **The Superior Court Correctly Applied Colorado Law, and the Record Supports Its Ruling.**

¶12 Arizona does not recognize a common-law marriage unless it is entered in a state where common-law marriage is legal. A.R.S. § 25-112(A); *Grant v. Smith*, 27 Ariz. App. 427, 429 (1976). Colorado recognizes common-law marriage. *See Hogsett v. Neale*, 478 P.3d 713, 715, ¶ 3 (Colo. 2021). Griego contends the parties had a valid common-law marriage, and the court misapplied Colorado law.

¶13 In 2021, Colorado "refined" the standard for determining whether a common-law marriage exists. Previously, "[a] common law marriage [was] established by the mutual consent or agreement of the parties to be husband and wife, followed by a mutual and open assumption of a marital relationship." *People v. Lucero,* 747 P.2d 660, 663 (Colo. 1987). *Lucero* instructed courts to consider any evidence that "openly manifests" the parties' intent to have a marital relationship, including: "a couple's cohabitation; reputation in the community as husband and wife; maintenance of joint banking and credit accounts; purchase and joint ownership of property; filing of joint tax returns; and use of the man's surname by the woman or by children born to the parties." *Hogsett*, 478 P.3d at 714, ¶ 1 (citing *Lucero,* 747 P.2d at 665).

¶14 The Colorado Supreme Court issued three opinions in 2021, refining the *Lucero* test to reflect the "sea change in social norms" in modern marriages. *Hogsett*, 478 P.3d at 722, ¶ 42; *see also In re Estate of Yudkin*, 478 P.3d 732 (Colo. 2021); *LaFleur v. Pyfer*, 479 P.3d 869 (Colo. 2021). The Court held that "the *Lucero* factors may be overinclusive of couples who lack the intent to be married yet engage in conduct once associated only with spouses. On the other hand, the factors may be underinclusive of genuine marriages that don't conform to a traditional model." *Hogsett*, 478 P.3d at 723, ¶ 48.

¶15 Thus, the test for proving a common-law marriage in Colorado now requires:

> the mutual consent or agreement of the couple to enter the legal and social institution of marriage, followed by conduct manifesting that mutual agreement. The key question is whether the parties mutually intended to enter a *marital* relationship—that is, to share a life together as spouses in a committed, intimate relationship of mutual support and mutual obligation.

*Id.* at 723–24, ¶ 49. The courts still look at the parties' conduct to determine their intent. *Id.* at 724, ¶ 49. To that end, courts may still consider the *Lucero* factors "such as the parties' cohabitation, reputation in the community as spouses, maintenance of joint banking and credit accounts, purchase and joint ownership of property, filing of joint tax returns, and use of one spouse's surname by the other or by children." *Id.* at 724–25, ¶ 55. *Hogsett* added that courts should also consider conduct such as shared financial responsibility, joint estate planning, symbols of commitment, and "the parties' sincerely held beliefs regarding the institution of marriage." *Id.* at 725, ¶ 56.

¶16    Griego argues the superior court erred by applying the updated *Hogsett* test for proving a common-law marriage. But in her pretrial statement, Griego recognized that *Hogsett* applied. She argued that under *Hogsett,* the court could still consider the *Lucero* factors and the totality of the circumstances to determine whether they intended to enter a *marital* relationship. By arguing on appeal that *Hogsett* does not apply, she contradicts the position taken in her pretrial statement. Thus, we do not consider it. *See Bobrow v. Bobrow*, 241 Ariz. 592, 597, ¶ 23 (App. 2017).

¶17    A common-law marriage requires a mutual intent to enter a marital relationship. *Hogsett*, 478 P.3d at 723–24, ¶ 49. The superior court weighed the conflicting evidence of the parties' intent. It found that their conduct was more consistent with an intent to cohabitate than to enter a *marital* relationship. The evidence supports this conclusion.

¶18    The superior court found DiDomenico credibly testified that he never expressed an intent to marry Griego and did not call her his wife. DiDomenico did not believe they were married because his religious beliefs required them to be married "before the eyes of God and witnesses, which was never done." He did not give her a ring, and there was no evidence of any ceremony or anniversary celebrations. Griego sometimes used DiDomenico's last name, but she also used "Griego" or a combination of both names at other times. Griego never legally changed her name. The parties only filed joint tax returns once, and according to DiDomenico, he did so to claim Griego as a dependent. The parties owned some property jointly but held other property individually. According to DiDomenico, they held joint title to the Arizona real property as a form of estate planning to pass the property to their son. DiDomenico claimed they had not lived together *continuously* for the last thirty years.

¶19    On the other hand, Griego testified that the parties cohabitated since 1976 and had a child together in 1977. Griego believed

they were in a marital relationship and testified that they held themselves out as husband and wife. They had joint bank accounts. According to Griego, DiDomenico's pension documents stated the parties were married in April 1977. That said, in 2018, Griego signed a statement witnessed by the pension representative saying they were *not* in a common-law marriage.

¶20 Determining whether there is a common-law marriage "present[s] difficult, fact-intensive inquiries." *Hogsett*, 478 P.3d at 725, ¶ 60. The Colorado courts recognize that trial courts can best make these discretionary decisions. *Id.*; *Lucero*, 747 P.2d at 665. The superior court thoughtfully weighed the conflicting evidence, and the evidence supported its decision. Because the court did not abuse its discretion, we affirm.

## ATTORNEY'S FEES AND COSTS

¶21 Per our discretion, we deny DiDomenico's request for an award of attorney's fees on appeal. But as the successful party, DiDomenico is entitled to his reasonable costs under A.R.S. § 12-342 upon compliance with ARCAP 21.

## CONCLUSION

¶22 We affirm.

