### KENNEDY v. DAMRON et al.

Court of Appeals of Kentucky.

March 12, 1954.

Rehearing Denied June 11, 1954.

R. Campbell Van Sant, Frankfurt, Francis M. Burke, Pikeville, for appellant.

Joe Hobson and S. C. Ferguson, Prestonsburg, for appellees.

CULLEN, Commissioner.

Eula Mae Kennedy (Damron) sought a share in the estate of J. R. Damron, deceased, on the ground that she was his widow. The court found that she had not been married to J. R. Damron, either by a ceremonial or common-law marriage, and she now appeals from a judgment denying her claim.

Eula Mae undertook to establish that she had entered into a ceremonial marriage with Mr. Damron in West Virginia, in 1940. However, she was unable to produce any evidence to support this claim, other than her own testimony. The evidence for the other side is quite convincing that no such marriage took place. On this appeal her counsel frankly state that they are not relying upon the alleged West Virginia marriage, but upon a common-law marriage claimed to have been consummated in Ohio in 1950.

The evidence shows that Eula Mae and Mr. Damron commenced a clandestine relationship in 1937, in West Virginia, when Mr. Damron was married to another. In 1939, Mr. Damron's wife obtained a divorce and he and Eula Mae then moved to Kentucky, where they lived together secretly until late in 1940, when Mr. Damron's mother died. Thereafter, until the spring of 1949, they lived together openly in Kentucky, and there is evidence that during this period they held themselves out to the public as man and wife. In 1949, Mr. Damron and his brother-in-law purchased a farm in Ohio, and the brother-in-law took occupancy of the main dwelling on the farm. Mr. Damron and Eula Mae visited the farm from time to time during 1949 and 1950, and during part of this time they lived in a converted chicken house on the farm. There was evidence that during the last nine months of 1950 they spent more time in Ohio than in Kentucky, but ordinarily they did not spend more than one week at a time in Ohio, and they never spent more than one month at a time in Ohio. In 1951 they remained in Kentucky, where Mr. Damron died in December 1951.

During the period Mr. Damron and Eula Mae were visiting and living at the farm in Ohio, Mr. Damron continued to maintain his dwelling in Kentucky. He did not have the utilities cut off, and he arranged with a neighbor to look after the house and receive the mail. He and Eula Mae left most of their clothing in the Kentucky dwelling, taking to Ohio only enough for their temporary needs. He continued to vote in Kentucky and do his banking there. He also continued to maintain a post office box in Kentucky, and during 1950 he maintained a garden in connection with his Kentucky dwelling.

Under the evidence, the chancellor clearly was correct in finding as a fact that Mr. Damron and Eula Mae never became residents of Ohio. Accordingly, Travers v. Reinhardt, 205 U.S. 423, 27 S. Ct. 563, 51 L.Ed. 865, so confidently relied upon by counsel for Eula Mae, is not applicable. In that case, the parties had established a permanent residence in a state in which common-law marriages were valid. Likewise inapplicable are the Ohio cases of Dibble v. Dibble, 88 Ohio App. 490, 100 N.E.2d 451, and Markley v. Hudson, 143 Ohio St. 163, 54 N.E.2d 304, because in both of these cases the parties had established a domicile in Ohio.

The Dibble case, cited above, holds that an agreement of marriage, which is essential to establish a common-law marriage in Ohio, may be implied from the conduct of the parties in holding themselves out to the public as man and wife in the community in which they reside. The case further holds that a valid common-law marriage may be established between a man and woman even though their original relationship was meretricious or illicit. However, it appears that both holdings were predicated upon the existence of a domicile in Ohio. It seems obvious that if the conduct and reputation of the parties as man and wife are to be accepted as evidence of a contract of marriage entered into in a state which recognizes common-law marriages, the conduct must be carried on and the reputation acquired in the char-

acter or capacity of estabished members of a community. This is particularly so where the relationship was meretricious or illicit in its origin. As we said in Carroll v. Carroll, Ky., 251 S.W.2d 989, there must be something to give validity to the relationship other than the mere crossing of a state line.

■ The relation of husband and wife is inseparably identified with the home. We think that if the relation is to be presumed from conduct and reputation, it must be in identification with an established home. That this is the law of Ohio is apparent from the language in the Dibble case, 100 N.E.2d 451, 457, referring to conduct and reputation " 'in the community in which they reside.' " We do not intend to say that there must be a legal domicile in the common-law state, in the sense of residence with intent to remain permanently, but we are of the opinion that there must be an established place of abode with which the parties may be identified as members of the community.

■ Upon the evidence in the case before us, the chancellor was justified in concluding that Mr. Damron and Eula Mae were merely visitors in Ohio, with no abode by which they established themselves as members of the community. It is true that they occupied a dwelling for a time, but only in the character of transients, and their holding themselves out as man and wife, in Ohio, was principally as to tradesmen with whom they had casual dealings. They did not become an established part of the community.

A further impediment to Eula Mae's claim of a common-law marriage arises from the fact that she insisted at all times that she and Mr. Damron were ceremonially married in West Virginia. Her position is shown by the following excerpt from the testimony:

"Q. Did you ever say to one another that you would take him for your husband and he would take you for his wife? A. No, we didn't in the State of Ohio. We were married in West Virginia.

"Q. You don't claim you entered into a marriage relationship in Ohio? A. No, not in the State of Ohio."

■■ Under the law of Ohio, an agreement *in praesenti* to be man and wife is essential to establish a common-law marriage, although such an agreement may be implied from the conduct of the parties in holding themselves out to the public as man and wife, in the community in which they reside. Dibble v. Dibble, 100 N.E.2d 451; Markley v. Hudson, 143 Ohio St. 163, 54 N.E.2d 304. It will be obvious that if the parties lived together under the belief that they were ceremonially married, there would have been no occasion for them to make an express agreement to be man and wife; by the same token, their living together would not be evidence of an implied agreement.

In Carroll v. Carroll, Ky., 251 S.W.2d 989, we pointed out that a claim of a ceremonial marriage is entirely inconsistent with the existence of a common-law marriage. In that case we held that a common-law marriage in Florida was not established, where the putative wife had pitched her case on a ceremonial marriage in Ohio.

Another similarity between the present case and the Carroll case is that in neither case did the putative wife plead specifically a common-law marriage. The pleadings of Eula Mae in the present case merely allege cohabitation and public recognition as man and wife in Ohio, without alleging an agreement in Ohio to be man and wife.

We are unable to distinguish this case from the Carroll case, and therefore we conclude that the chancellor correctly adjudged there was no marriage.

The judgment is affirmed.