COURT OF APPEALS OF VIRGINIA

Present: Judges Bray, Annunziata and Senior Judge Hodges
Argued at Norfolk, Virginia


LENA VICTORIA KELDERHAUS

v.          Record No. 0569-95-1          OPINION BY
                                          JUDGE RICHARD S. BRAY
BRUCE LYNN KELDERHAUS                     FEBRUARY 27, 1996


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                  A. Bonwill Shockley, Judge

          Richard F. Popp (John Max Barger, Third-Year
          Student Practice; Davis, Irwin & Brynteson,
          P.C., on brief), for appellant.

          No brief or argument for appellee.



     These proceedings were initiated upon the bill of complaint

of Lena Victoria Kelderhaus (wife) praying for a divorce from

Bruce Lynn Kelderhaus (husband) and attendant relief, including

spousal support.  In response, husband challenged the validity of

the marriage.  Following an ore tenus hearing, the trial court

concluded that the parties were not married and dismissed wife's

bill.  On appeal, wife complains that the trial court erroneously

declined to recognize her common-law marriage to husband or, in

the alternative, award her relief as a "putative spouse."  We

disagree and affirm the judgment of the trial court.

     Under familiar principles, "'we view [the] evidence and all

reasonable inferences in the light most favorable to the

prevailing party below[,]'" husband in this instance.  Pommerenke

v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988)

(citation omitted).  The judgment of the trial court is presumed

to be correct, <u>Broom v. Broom</u>, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992), and will not be disturbed unless plainly wrong or without evidence to support it. <u>Dodge v. Dodge</u>, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986). "The burden is upon the party appealing to point out the error in the decree and to show how and why it is wrong." <u>Kaufman v. Kaufman</u>, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988).

Bruce and Lena Kelderhaus obtained a marriage license in California on December 21, 1992. When applying for the license, husband knowingly misrepresented that his marriage to another had been previously dissolved.[1] Several days later, the parties ostensibly married in California, then traveled to Flagstaff, Arizona, residing together there as husband and wife. On July 26, 1993, an Arizona decree divorced husband from his former wife and, on August 1, 1993, husband and wife participated in a second marriage "ceremony."[2] The parties thereafter continued to reside together and represented themselves as husband and wife in Arizona until early August, 1993, when they relocated to Virginia. In driving from Arizona to Virginia, the parties "travers[ed] the country" as "husband and wife," stopping "overnight" in Texas and Oklahoma.

THE MARRIAGE

___

[1]Wife claimed no knowledge of this circumstance, but husband testified otherwise.

[2]For reasons unspecified in the record, it is uncontroverted that this was not a "legal ceremony."

"A marriage's validity is to be determined by the law of the state where the marriage took place, unless the result would be repugnant to Virginia public policy."  Kleinfield v. Veruki, 7 Va. App. 183, 186, 372 S.E.2d 407, 409 (1988); Hager v. Hager, 3 Va. App. 415, 416, 349 S.E.2d 908, 909 (1986).  "A marriage entered into prior to the dissolution of an earlier marriage of one of the parties is [bigamous, and consequently,] a void marriage in . . . Virginia."  Kleinfield, 7 Va. App. at 186, 372 S.E.2d at 409 (citing Code §§ 20-38.1 and 20-45.1(a)).  Bigamous marriages "confer[] no legal rights" and are "contrary to the laws of Virginia and [its] public policy."  Id. at 190, 372 S.E.2d at 411.  Thus, when the parties purportedly married in California, the union was bigamous and void as a matter of law.[3]  See Code § 20-43.

Wife, however, argues that this impediment to husband's remarriage was removed by the subsequent Arizona divorce decree, and, therefore, the ensuing relationship as husband and wife during their passage through Texas and Oklahoma, states which recognize common-law marriages, resulted in marriage.  See Metropolitan Life Ins. Co. v. Holding, 293 F. Supp. 854, 858 (E.D. Va. 1968).  Although Virginia does not recognize domestic common-law marriages, Offield v. Davis, 100 Va. 250, 253, 40 S.E.

---

[3]We note that the marriage entered into by the parties in California would also be considered void ab initio under California law.  See Cal. Fam. Code § 2201 (West 1995) ("A subsequent marriage contracted by a person during the life of a former husband or wife of the person, with a person other than the former husband or wife, is illegal and void from the beginning.").

910, 911 (1902), it does extend comity to such unions "valid under the laws of the jurisdiction where the common-law relationship was created."  Farah v. Farah, 16 Va. App. 329, 334, 429 S.E.2d 626, 629 (1993).

TEXAS

By statute, Texas provides that ". . . the marriage of a man and woman may be proved by evidence that . . . they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married."  Tex. Fam. Code Ann. § 1.91(a)(2) (West 1996).  The parties must represent to others while in the state of Texas that they are husband and wife.  Winfield v. Renfro, 821 S.W.2d 640, 648 (Tex. Ct. App. 1991).  Residing together as husband and wife in another state does not satisfy the Texas statute.  See Williams v. Home Indem. Co., 722 S.W.2d 786, 788 (Tex. Ct. App. 1987).  "Strict compliance with these requirements is a necessity, and each one must be established by sufficient proof before [Texas] courts will lend judicial sanction to any assertion . . . that . . . a [marital] relationship exists."  Middlebrook v. Wideman, 203 S.W.2d 686, 688 (Tex. Civ. App. 1947).

Here, the record does not support the requisite finding that the parties "lived together . . . as husband and wife" in Texas and "there represented to others that they were married."  See Tex. Fam. Code Ann. § 1.91(a)(2) (emphasis added).  The limited testimony that they migrated through Texas as "husband and wife"

- 4 -

establishes only a brief, transitory contact with the state which clearly does not constitute "strict compliance" with the statutory requirements.  Hence, wife's claim to a valid common-law Texas marriage is without merit.

A party asserting common-law marriage in Oklahoma must prove: (1) an actual and mutual agreement between spouses to be husband and wife, (2) a permanent relationship, (3) an exclusive relationship, accompanied by cohabitation as man and wife, and (4) a mutual representation to the public as husband and wife,[4] Estate of Stinchcomb, 674 P.2d 26, 28-29 (Okla. 1983), all by clear and convincing evidence. Maxfield v. Maxfield, 258 P.2d 915, 921 (Okla. 1953). Although Oklahoma courts have not determined that the requisite mutual representation must occur within the state, several jurisdictions have addressed the issue relative to other common-law jurisdictions, and we are persuaded by their conclusion that this element must be satisfied within the common-law state. See Kennedy v. Damron, 268 S.W.2d 22 (Ky. Ct. App. 1954); Laikola v. Engineered Concrete, 277 N.W.2d 653 (Minn. 1979); Andrews v. Signal Auto Parts, Inc., 492 S.W.2d 222 (Tenn. 1972).

In Kennedy, the Kentucky court declined to recognize mere visits to Ohio, a common-law state, by persons as sufficient to support a common-law marriage in that jurisdiction. 268 S.W.2d at 24. The court found "[i]t . . . obvious that if . . . conduct and reputation of . . . parties as man and wife are to be accepted as evidence of a contract of marriage entered into in a state which recognizes common-law marriages, the conduct must be

_____

[4]Because we find insufficient evidence of this indispensable element to an Oklahoma common-law marriage, we decline to consider the remaining prerequisites.

- 6 -

carried on and the reputation acquired . . . [as] established members of a community."  Id. at 23-24.  Citing Kennedy with approval, the Supreme Court of Minnesota reached a similar conclusion in reviewing a Montana relationship, noting that "[t]he general . . . rule . . . is that the . . . holding out as husband and wife must be of sufficient duration in the common-law state to create a public reputation of husband and wife." Laikola, 277 N.W.2d at 658.

Here, the record reveals only minimal contact with Oklahoma and no evidence of specific conduct or representations by the parties, as husband and wife, in that jurisdiction.  To sanction marriage arising from such an insignificant nexus with the common-law state would at once distort and trivialize the concept of common-law marriage and ignore the principles which govern such unions in Oklahoma.  We, therefore, find the evidence insufficient to prove a common-law marriage in Oklahoma.

## PUTATIVE SPOUSE

Lastly, wife claims that the trial court, after finding her marriage to husband either "void or voidable," should have awarded putative spousal support in accordance with California law.  See Cal. Fam. Code §§ 2251, 2254 (West 1995).  Assuming, without deciding, that these provisions are relevant to the instant proceeding, relief as a putative spouse requires that he or she "believed in good faith that the marriage was valid." Id. at § 2251.  Here, husband testified that wife was aware that he remained married to another at the time of the void California

- 7 -

nuptials.  Consequently, wife could not have entertained the requisite good faith belief that the California marriage was valid and, therefore, was not a putative spouse within the intendment of the California statute.

Accordingly, we find that the trial court correctly concluded that the parties were not married to one another and affirm the decree dismissing the bill of complaint.

<u>Affirmed</u>.