DECISION
Defendant-appellant, Bonnie Redding, appeals from a judgment of the Franklin County Court of Common Pleas finding that she is disqualified from receiving certain pension benefits from plaintiff-appellee, Ohio Police and Firemen's Disability Pension Fund ("the fund"), and further finding that the fund may recover from appellant certain benefits previously paid to her.
Appellant is the widow of Daniel Alfred Redding, a Columbus Police Officer who died in 1965 of complications from an on-duty injury incurred in 1961. In addition to appellant, Officer Redding was survived by their nine children.
Shortly after Officer Redding's death, appellant moved to Wyoming with her children. She soon began cohabitating with one David Maher, with whom she had three additional children. Appellant and Maher lived together for the next 30 years, until Maher began serving a criminal sentence in a Wyoming penitentiary. The couple was never ceremonially married in Wyoming or any other state.
During this time, appellant received survivor's benefits from the fund as the result of Officer Redding's death. These survivor's benefits, however, were by statute conditional and would terminate upon remarriage. Remarriage was a dis-qualification criterion for survivor's benefits until removed in 1998. Former R.C. 741.49(F); former R.C.742.37(D); and current R.C. 742.37(D)(3).
In addition to her survivor's benefits, appellant was also potentially entitled, after 1976, to death benefits under R.C. 742.63. The fund's death benefits also specified remarriage as a disqualification criterion, which was not removed until 1999. R.C. 742.63(B); 1999 H.B. 283.
Appellant neither applied for nor received death benefits after their creation in 1976, and in 1998 the fund notified her that she and some of her children might be eligible for back death benefits, and that she might also be eligible for prospective death benefits. The fund subsequently reviewed appellant's case, however, and concluded that appellant had become ineligible to receive either survivor's benefits or death benefits, including those survivor's benefits already paid to her, after entering into a common law marriage with David Maher in 1967. The fund thereafter instituted the present declaratory judgment action to determine appellants right to survivor's benefits and death benefits.
Appellant initially moved for summary judgment on the grounds that she had continuously lived in Wyoming since 1966, had never entered into a ceremonial marriage there or anywhere else, had never resided with Maher in Ohio, and that during the period in question Wyoming did not recognize common law marriage. The trial court overruled the motion for summary judgment, finding that the contractual nature of appellant's pension rights called for application of Ohio law to any determination as to the existence of a common law marriage and any consequent disqualification from benefits, and that there remained a dispute of material fact in the case regarding the existence of a common law marriage.
The matter was tried to the bench before a magistrate, who found that there was clear and convincing evidence to support the fund's assertion that appellant had entered into a common law marriage as defined under Ohio law prior to 1991, when Ohio ceased to recognize such unions. Both parties filed objections to the magistrate's report. The trial court then rendered a decision adopting the magistrate's factual conclusions regarding the existence of a common law marriage between appellant and David Maher, including that the commencement date for such marriage should be set as April 16, 1967. Based upon this factual finding, the court found that appellant was ineligible for death benefits or survivor's benefits during the period of her common law marriage between April 16, 1967 and the repeal, in 1999 and 1998 respectively, of remarriage as a disqualifying criterion for death benefits and survivor's benefits. The trial court further found that the fund was entitled to recover survivor's benefits paid to appellant during the period when she was ineligible.
Appellant has timely appealed from the trial court's judgment and brings the following assignments of error:
Assignment of Error No. 1
 The trial court erred in applying Ohio's former common law marriage rules to two Wyoming residents who had never lived together in Ohio.
Assignment of Error No. 2
 The trial court erred in finding that all the essential elements of a common law marriage were proved by clear and convincing evidence where both parties to the alleged marriages [sic] denied that there ever was any promise of marriage in praesenti; their community of friends knew they were not married; and they filed their tax return as unmarried persons.
Assignment of Error No. 3
 The trial court should award defendant interest on the back benefits (assuming assignments 1 or 2 is sustained).
Appellant's second assignment of error will be addressed first. Appellant asserts, in essence, that the trial court's determination that the elements of the common law marriage had been shown is not supported by the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus. The weight to be given the evidence and credibility of witnesses are primarily matters for the trier of fact, who is in the superior position to evaluate the evidence and assess the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. After assessing the evidence in the record relied upon by the trial court, we find that there is sufficient, competent, credible evidence to support the trial court's conclusion that the elements of common law marriage as set forth in Umbenhower v. Labus (1912), 85 Ohio St. 238, were present and that, moreover, these factors had been shown by clear and convincing evidence as required by In re Estate of Redman v. State (1939), 135 Ohio St. 554. Appellant's second assignment of error is accordingly overruled, although our disposition of appellant's first assignment of error discussed below ultimately leaves our overruling of the second assignment of error without effect on the ultimate outcome of the appeal.
Appellant's first assignment of error does not raise a question of fact but one of law, and will accordingly be reviewed under a less deferential standard. Appellant asserts that the trial court erred in finding that Ohio law should be applied to find the existence of a common law marriage between appellant and Maher despite the fact that appellant and Maher at no time cohabitated in Ohio or otherwise engaged in Ohio in any of the conduct allegedly giving rise to a common law marriage.
Examining the undisputed facts of the case, it is not contested that appellant and Maher resided during the course of their cohabitation in Casper, Wyoming. It is equally undisputed that while Ohio, prior to 1991, recognized common law marriage, Wyoming during the period in question did not. Roberts v. Roberts (1948), 64 Wyo. 433, 196 P.2d 361. Neither party has pointed to a choice of law clause in statutes and regulations governing the fund which would resolve the conflict. The trial court relied on State ex rel. Cunat v. Trustees of Cleveland Police Relief Pension Fund (1948), 149 Ohio St. 477, and State ex rel. Horvath v. State Teachers Retirement Bd. (1998), 83 Ohio St.3d 67, for the proposition that rights in public employee pension funds are contractual in nature once vested. The trial court then applied conventional choice of law concepts in contract law as set forth in Gries Sports Enterprises, Inc. v. Modell (1984), 15 Ohio St.3d 284, and determined that Ohio law should apply when ascertaining whether appellant had remarried and thus lost her right to fund benefits.
Gries Sports, syllabus, suggests the following factors when resolving a choice of law conflict in a contractual dispute:
 In the absence of an effective choice of law by the parties, the contacts to be taken into account to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
 (d) the location of the subject matter of the contract, and
 (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
 (Section 188 of 1 Restatement of the Law 2d, Conflict of Laws, adopted and applied.)
Certainly, if the present matter involved a definition under Ohio law of concepts such as income, disability, or employment, as they pertain to the receipt of Ohio pension benefits, application of Ohio law could persuasively be argued. However, the institution of marriage, and most significantly the threshold issue of the very validity and existence of a marriage, involve profound and far-reaching determinations. If we adopt the position of the trial court, we are, in essence, declaring that a state of marriage exists between appellant and Maher. The implications devolving from such a declaration extend far beyond the scope of the present case, and imply a whole panoply of rights and obligations between the supposed marital partners, as well as in their relation to the world at large.
The relevant statutes governing pension rights in the fund do not speak of quasi-marriage, a state approximating marriage, or a limited determination that a marriage exists for purposes of eligibility for fund benefits; the former disqualifying provisions refer to remarriage, pure and simple. The determination to be made in the present case, therefore, was not whether appellant had entered into a lifestyle such as to disqualify her from pension benefits, but, rather, whether she had "remarried."
Because of the enormous significance and import of the institution of marriage, courts have universally applied principals of comity, and the full faith and credit clause of the United States Constitution, to find that the validity or existence of a marriage should be determined under the law of the place where the alleged marriage was contracted. The Ohio Supreme Court explicitly acknowledged this rule in Mazzolini v. Mazzolini (1958), 168 Ohio St. 357, paragraph one of the syllabus, stating: "[g]enerally, the validity of a marriage is determined by the lex loci contractus; if the marriage is valid where solemnized, it is valid elsewhere; if it is invalid there, it is invalid everywhere." The overwhelming weight of authority from other states acknowledges the principle expressed in Mazzolini. See, e.g., Kelderhaus v. Kelderhaus (1996), 21 Va. App. 721, 467 S.E.2d 303; Carpenter v. Carpenter (1994),208 A.D.2d 882, 617 N.Y.S.2d 903; Mott v. Duncan Petroleum Trans. (1980), 51 N.Y.2d 289, 292, 434 N.Y.S.2d 155; Netecke v. Louisiana (La.App. 1998), 715 So.2d 449 ("[t]he law of the domicile of the alleged married couple is to be applied to determine whether the marriage is valid"); Colbert v. Colbert (1946), 28 Cal.2d 276, 169 P.2d 633. Closest to our present facts, at least one court has stated that residence within the state recognizing common law marriage by the parties to the marriage is a prerequisite to an application of that state's law in the finding of a common law marriage. Carpenter, supra, at 882.
We accordingly find that the trial court erred in applying Ohio law to proclaim the existence of a common law marriage of persons residing outside of Ohio and in fact residing in a state which gives no recognition to common law marriages. Appellant was not married, either ceremonially or by common law, in her domicile state of Wyoming. Pursuant to Mazzolini, Ohio should apply the doctrine of lex loci contractus when assessing the existence of a marriage. Based upon the principles enumerated in Mazzolini, we conclude that appellant was not remarried.
We accordingly find that appellant's first assignment if error is well-taken and is sustained.
Appellant's third assignment of error, which is conditional in nature, asserts that, if we were to reverse the trial court's determination, we should specify that appellant is entitled to interest on any back benefits payable. This question was not resolved by the trial court and is therefore not properly before us. Appellant's third assignment of error is accordingly overruled.
In summary, we find that the trial court's factual determinations in assessing the relationship between appellant and David Maher is supported by the manifest weight of the evidence and appellant's second assignment of error is overruled. We further find, however, that the trial court erred in extending the application of Ohio law to give a determination of the marital state of appellant while she resided outside of Ohio, and appellant's first assignment of error is sustained. Appellant's third assignment of error is not properly before us and is overruled. The judgment of the Franklin County Court of Common Pleas is reversed and the matter is remanded to that court for further proceedings to determine back benefits and prospective benefits due to appellant.
Judgment reversed and cause remanded.
PETREE, J., concurs.
LAZARUS, J., concurs in judgment only.