COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Malveaux and Senior Judge Annunziata
Argued at Alexandria, Virginia

PUBLISHED

BARTHOLOMEW D.S. PORTER

                                          OPINION BY
v.      Record No. 1872-17-4         JUDGE ROSEMARIE ANNUNZIATA
                                          AUGUST 14, 2018

EILEEN PORTER

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Daniel B. Schy (ShounBach, on brief), for appellant.

Valerie E. Hughes (The Bowen Law Firm, P.C., on brief), for
appellee.

Appellant, Bartholomew D.S. Porter, appeals an order dismissing his complaint for divorce.

Appellant argues that the circuit court "erred in finding that the parties' conduct did not constitute

cohabitation in Washington, D.C., for the purposes of establishing a common law marriage under

D.C. law."  We find no error, and affirm the decision of the trial court.

BACKGROUND

Appellant, a Washington, D.C. (D.C.) resident, and appellee, Eileen Porter, a Virginia

resident, scheduled a wedding ceremony for February 25, 2006 in D.C.  On February 24, 2006, the

parties obtained a marriage license from Virginia, not D.C.  The officiant, who was licensed to

perform marriages in D.C. and Virginia, indicated on the marriage license that the ceremony was

conducted in Arlington, Virginia, on February 25, 2006, but no ceremony, actually, occurred in

Virginia. Instead, the wedding ceremony occurred in D.C. on February 25, 2006.[1] While approximately thirty to forty friends and relatives watched, the parties exchanged marriage vows and stated their intentions to be married to one another. At the conclusion of the ceremony, the parties were introduced as "Mr. and Mrs. Porter." The parties hosted a reception after the ceremony and were presented to their guests as husband and wife. After the reception, the parties stayed overnight at a hotel in D.C. but, because they were too tired, and appellee was five months pregnant, they did not engage in sexual intercourse during their stay in D.C. The next day, on February 26, 2006, the parties left the hotel and returned to their separate residences. In May 2006, the parties started living together in the same residence in Virginia. From February 25, 2006 until their separation in September 2015, the parties considered themselves married and held themselves out as a married couple. Since February 25, 2006, the parties have filed joint tax returns as a married couple; they purchased a home, which was titled as tenants by the entirety.

On September 22, 2015, the parties separated. Appellant filed a complaint for divorce on October 21, 2016, and, on March 27, 2017, appellee filed a motion for declaration of marriage status and related relief. By consent order entered on April 14, 2017, the case was transferred from Prince William County to Fairfax County. On July 27, 2017, the parties appeared before the circuit court. After hearing the parties' evidence and arguments, the circuit court took the matter under advisement and, on October 11, 2017, issued a letter opinion. First, the circuit court held that there was no valid Virginia marriage because, although the parties had a Virginia license to marry and the celebrant was licensed in Virginia, the ceremony occurred outside the Commonwealth. The circuit

---

[1] Both parties were present when the officiant completed the license and indicated that the marriage took place in Arlington, even though the marriage ceremony occurred in D.C. The officiant told the parties that they would need to have another ceremony in Virginia, in which they expressed their intent to marry, because their license was from Virginia, not D.C. The parties did not think it was necessary and did not do so. In short, the parties believed that they were married.

court concluded that the marriage was void *ab initio*. Second, the circuit court held that the parties did not enter a valid common law marriage in D.C. because the parties' one-night stay in a hotel did not meet the cohabitation requirements to establish a common law marriage. After appellant filed his objections, on October 27, 2017 the circuit court entered its final order and dismissed the complaint for divorce. This appeal followed.

ANALYSIS

Appellant argues the circuit court erred in finding that "the parties' conduct did not constitute cohabitation in Washington D.C. for the purposes of establishing a common law marriage under D.C. law."[2] Appellant contends that the parties' one-night stay in D.C. after they exchanged marriage vows was sufficient to establish a common law marriage. Appellant asserts that the "purpose of common law marriage is to ensure that people who think they are married, behave as if they are married, . . . and are believed by all whom they know to be married are, in fact, married, irrespective of their failure to comply with the formal ministerial process."

"The public policy of Virginia . . . has been to uphold the validity of the marriage status as for the best interest of society." Levick v. MacDougall, 294 Va. 283, 291, 805 S.E.2d 775, 778 (2017) (quoting Needam v. Needam, 183 Va. 681, 686, 33 S.E.2d 288, 290 (1945)). "[T]hus, the presumption of the validity of a marriage ranks as 'one of the strongest presumptions known to the law.'" Id. (quoting Eldred v. Eldred, 97 Va. 606, 625, 34 S.E. 477, 484 (1899)).

"Virginia does not recognize common-law marriages where the relationship is created in Virginia." Farah v. Farah, 16 Va. App. 329, 334, 429 S.E.2d 626, 629 (1993) (citing Offield v.

---

[2] Appellant does not challenge the circuit court's finding that the parties' marriage was void *ab initio* because their marriage was not a valid marriage created under Virginia law; therefore, we will not address this aspect of the circuit court's ruling. For the same reason, we also find it unnecessary to address the Virginia Supreme Court's recent decision about void and voidable marriages in Levick v. MacDougall, 294 Va. 283, 805 S.E.2d 775 (2017), which was decided subsequent to the circuit court's final order.

Davis, 100 Va. 250, 253, 40 S.E. 910, 914 (1902)).  However, "a common-law marriage that is valid under the laws of the jurisdiction where the common-law relationship was created" is recognized in Virginia.  Id.  "A marriage's validity is to be determined by the law of the state where the marriage took place, unless the result would be repugnant to Virginia public policy." Kelderhaus v. Kelderhaus, 21 Va. App. 721, 725, 467 S.E.2d 303, 304 (1996) (quoting Kleinfield v. Veruki, 7 Va. App. 183, 186, 372 S.E.2d 407, 409 (1988)).

Unlike Virginia, D.C. recognizes common law marriages.  Bansda v. Wheeler (In re Ekekwe), 995 A.2d 189, 198 (D.C. 2010); Coates v. Watts, 622 A.2d 25, 27 (D.C. 1993); Hoage v. Murch Bros. Constr. Co., 50 F.2d 983, 985 (D.C. Cir. 1931).  "However, '[s]ince ceremonial marriage is readily available and provides unequivocal proof that the parties are husband and wife, claims of common law marriage should be closely scrutinized . . . .'"  Bansda, 995 A.2d at 198 (quoting Coates, 622 A.2d at 27).  "The elements of common law marriage in [D.C.] are cohabitation as husband and wife, following an express mutual agreement, which must be in words of the present tense."  Coates, 622 A.2d at 27 (citing East v. East, 536 A.2d 1103, 1105 (D.C. 1988)).  "[A] party claiming that a common law marriage exists must prove the existence of that common law marriage by a preponderance of the evidence."  Cerovic v. Stojkov, 134 A.3d 766, 774-75 (D.C. 2016).

"Whether a common law marriage exists is largely a factual determination."  Mesa v. United States, 875 A.2d 79, 83 (D.C. 2005).  "Thus, we will affirm the trial court's findings regarding the existence of a common law marriage 'unless appellant can persuade us that it is plainly wrong or without evidence to support it.'"[3]  Id. at 83-84 (quoting East, 536 A.2d at 1106).

---

[3] The narrow issue before this Court is whether there was a valid common law marriage in D.C.; therefore, contrary to the parties' assertions, we do not review this case with a *de novo* standard of review.

Appellant contends that the parties entered into a common law marriage in D.C. by virtue of their expressed intent to marry one another at the wedding ceremony and their overnight stay in the same hotel room. He asserts that, from the time of the wedding ceremony on February 25, 2006 through the morning of February 26, 2006, the parties had "connected lives," and their actions showed they considered themselves to be a married couple. They participated in the wedding ceremony, attended the wedding reception, and stayed overnight in the same hotel room. Appellant argues these actions met the requirements for a D.C. common law marriage.

The circuit court found that appellant met the burden of proving the parties had an express mutual agreement because the parties "clearly indicated an agreement to marry one another using words in the present tense during the [D.C.] ceremony." However, it found appellant failed to meet his burden of proving the parties cohabitated together in D.C.

As noted by the circuit court, "cohabitation is a required element of common law marriage" in D.C., but "the minimum length of that cohabitation has never been clearly defined" by D.C. case law. However, while appellant was a D.C. resident, the one-night hotel stay was the only nexus that appellee and the couple had to D.C.

Appellant relies on Crane v. Puller, 899 A.2d 879 (Md. Ct. Spec. App. 2006), to support his argument that the parties' overnight stay in D.C. was sufficient to prove that the parties cohabitated. In Crane, the Court of Special Appeals of Maryland discussed Blaw-Knox Construction Equipment Co. v. Morris, 596 A.2d 679 (Md. Ct. Spec. App. 1991), which held that a couple's two-night cohabitation in Pennsylvania, together with evidence of reputation in Pennsylvania, i.e. holding themselves out as husband and wife to all their Pennsylvania friends, were sufficient evidence of a Pennsylvania common law marriage to create a jury question. Id. at 913-14.

Not all courts have accepted a short duration visit as proof sufficient to meet the cohabitation requirement of common law marriage. This Court addressed the issue in Kelderhaus,

21 Va. App. 721, 467 S.E.2d 303. There, the parties purportedly married in California even though Mr. Kelderhaus' prior marriage had not been dissolved. Id. at 724, 467 S.E.2d at 304. Subsequently, Mr. Kelderhaus divorced his former wife, and the parties participated in a second marriage ceremony in Arizona that was not "legal." Id. The parties resided together and held themselves out as husband and wife while in Arizona. Id. They relocated to Virginia and, on their way, they stopped overnight in Texas and Oklahoma. Id. at 725, 467 S.E.2d at 304. Mrs. Kelderhaus argued that the parties had a common law marriage based on "their passage through Texas and Oklahoma, states which recognize common-law marriages." Id. at 725, 467 S.E.2d at 305.

In addressing the asserted common law marriage in Kelderhaus, we relied, in part, on Kennedy v. Damron, 268 S.W.2d 22 (Ky. Ct. App. 1954), which found that "mere visits to Ohio, a common-law state," by residents of Kentucky were not sufficient to prove the existence of a common law marriage. Id. at 727, 467 S.E.2d at 305 (citing Kennedy, 268 S.W.2d at 24). We held the parties' "brief, transitory contact" with Texas did not establish a common law marriage in Texas. Id. at 726, 467 S.E.2d at 305. Also underscoring the parties' "minimal contact with Oklahoma," id. at 727, 467 S.E.2d at 306, we concluded, "To sanction marriage arising from such an insignificant nexus with the common-law state would at once distort and trivialize the concept of common-law marriage and ignore the principles which govern such unions in Oklahoma [and Texas]," id. at 728, 467 S.E.2d at 306.

Here, the circuit court found similarities between Kelderhaus and the facts of this case in that both cases involved one-night hotel stays in foreign jurisdictions as proof a common law marriage existed. The circuit court held that "a one-night stay – even where the parties believe themselves to be married and have been through a marriage ceremony – is insufficient" to establish cohabitation for purposes of a common law marriage in D.C.

Other states also have held that the parties must show more than a short visit to a state that recognizes common law marriages as sufficient proof they cohabitated for common law marriage purposes. See Fellin v. Estate of Lamb (In re Estate of Lamb), 655 P.2d 1001, 1003 (N.M. 1982) (holding that a one-night or two-night stay at a hotel in Texas and the repetition of the parties' vows to one another were "insufficient to establish significant contacts with the State of Texas for purposes of common law marriage"); In re Estate of Bivians, 652 P.2d 744 (N.M. Ct. App. 1982) (holding that pleasure and business trips to Colorado and Texas were insufficient to prove a common law marriage); Cross v. Cross, 146 A.D.2d 302, 310, 541 N.Y.S.2d 202, 206 (N.Y. App. Div. 1989) (holding that parties could not "establish cohabitation and reputation in Washington, D.C. on the basis of a two-day visit"); Laikola v. Engineered Concrete, 277 N.W.2d 653, 656 (Minn. 1979) (en banc) (holding that "Minnesota residents may not enter into a valid common-law marriage by temporarily visiting a state which allows common-law marriages"); Stein v. Stein, 641 S.W.2d 856, 857-58 (Mo. Ct. App. 1982) (holding that a one-night trip to Pennsylvania and an exchange of marriage vows were insufficient to prove a common law marriage); In re Estate of Hildenbrand, 410 P.2d 244, 247 (Or. 1966) (holding that the parties did not enter into a common law marriage as a result of their "temporary visit[s] for holiday purposes to a common-law marriage state"); In re Marriage of Wharton, 639 P.2d 652, 653-54 (Or. Ct. App. 1982) (holding that business and pleasure trips to Idaho were insufficient to prove common law marriage). See also 52 Am. Jur. 2d Marriage § 73 (2002) ("[A] brief sojourn, whether for business or social purposes, by a nondomiciliary couple in a state which provides for the creation of a common-law marriage is insufficient to consummate such a marriage."). Here, although appellant had significant contact with D.C. as a resident, he and appellee's contact with D.C. *as a couple* was brief and insufficient to prove cohabitation for common law marriage purposes.

The parties in this case expressed their intent to marry one another in D.C., but they stayed only one night in that jurisdiction. Accordingly, the trial court did not err in dismissing the complaint for divorce and finding that appellant failed to prove the existence of a common law marriage in D.C.

Appellee seeks an award of the attorney's fees and costs she incurred on appeal. "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545, 810 S.E.2d 912, 919-20 (2018); Rule 5A:30(b). Since this litigation "addressed appropriate and substantial issues," and "neither party generated unnecessary delay or expense in pursuit of its interests," Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004), we deny appellee's request for an award of attorney's fees and costs she incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.